The Township of Middletown et al., Appellants *v.* County of Delaware, Appellee.

Argued September 14, 1984, before Judges DOYLE, COLINS and PALLADINO, sitting as a panel of three.

*John D. Snyder,* with him, *William H. Lamb, Lamb, Windle & McErlane, P.C.,* for appellants.

*Francis P. Connors,* for appellee.

502

OPINION BY JUDGE COLINS, December 24, 1984:

Middletown Township (Township) appeals from an order issued by the Court of Common Pleas of Delaware County, dismissing exceptions to an order entered in favor of Delaware County (County) granting declaratory relief[1] against the Township.

The County filed an action for Declaratory Judgment claiming that it was not subject to the zoning ordinances and other permitting ordinances or requirements of the Township.

The site in question consists of 212 acres of land located on Route 352, Middletown Township, whereon the County owns and operates the Fair Acres Geriatric Center Complex (Complex). A proposal to construct a fifty ton per day solid waste-to-energy plant on this property has been approved by the County. This plant will produce steam from the incineration of solid waste, which will be used to heat and air-condition the complex. Presently, the Township does not collect or dispose of any solid waste on behalf of its residents. It has been utilizing the County's facilities and services to dispose of the waste for over twenty years.

The plant will be located to the rear of the complex and will not be visible to motorists passing the site on Route 352. Operation of the plant will decrease the County's reliance on the use of landfills, lower the cost of disposing of waste,[2] and reduce the County's dependence on the use of fossil fuels to produce steam to heat and cool the complex.

---

[1] Declaratory Judgment Act, 42 Pa. C. S. §§7531-7541.

[2] Presently, the county is paying $17.78 per ton to dispose of solid waste in its landfill facilities located in Chester and Marple Townships. Construction and operation of the facility in question will add another facility and will reduce the distance required to travel to dispose of this waste. These are substantial factors bearing on the costs of disposing solid wastes.

In June of 1983 the Township advised the County that it objected to the proposed plant, that the County's property was subject to the zoning ordinances of the Township and that no permits were to be issued for the project.

This site has been the subject of a long term dispute between the County and Township. In 1973 the township, then a second class township, objected to the construction of the geriatric complex on similar grounds. In *Middletown Township v. Delaware County Institution District*, 450 Pa. 282, 299 A.2d 599 (1973), the Pennsylvania Supreme Court ruled that the zoning ordinances of Middletown Township were not enforceable against Delaware County. The court relied on Section 702 of the Second Class Township Code in reaching its decision.[3] Since it is now a home rule municipality, the Township argues that its local regulations are paramount and the county must comply with all zoning and building restrictions.

We agree.

Subsequent to the argument of the matter sub judice, our Supreme Court decided the case of *Department of General Services v. Ogontz Area Neighbors Association*, Pa. , 483 A.2d 448 (1984).

In *Ogontz*, the zoning ordinances of the City of Philadelphia were held preeminent to the Department of Public Welfare's powers as exercised through the Department of General Services, such that the Commonwealth could not build a structure which did not

---

[3] Section 702 of the Second Class Township Code, Act of May 1, 1933, P.L. 103, added by Section 1 of the Act of August 27, 1963, P.L. 1280, 53 P.S. §65762, provides in part: "No ordinance, bylaw, rule or regulation shall be adopted which in any manner restricts, interferes with, hinders or affects the operation of any other political subdivision or instrumentality of the Commonwealth of Pennsylvania."

comply with Philadelphia's zoning regulations. The Commonwealth had argued that since the Mental Health and Mental Retardation Act of 1966[4] gave it the power to condemn property, through eminent domain, for such purposes, that the Commonwealth must be immune from local use restrictions. In finding that Philadelphia's zoning ordinances would control, the Court noted that such situations were not contests between superior and inferior governmental entities, but were, instead a contest "between two instrumentalities of the state," *Ogontz*, Pa. at , 483 A.2d at 452 (quoting *City of Pittsburgh v. Commonwealth*, 468 Pa. 174, 178-79, 360 A.2d 607, 610 (1976)). The Court continued to note that "the problem, essentially, is one of statutory interpretation."

Therefore, we must look to the Delaware County Home Rule Charter enabling legislation to determine whether Delaware County has expressly been granted such powers by the legislature.[5]

It is not disputed that Delaware County has the power to construct and operate buildings for the purpose of disposing solid waste within its borders.[6] Furthermore, the County has the power of eminent

---

[4] Act of October 20, 1966, Special Sess. No. 3, P.L. 96, *as amended*, 50 P.S. §§4101-4704.

[5] Home Rule Charter and Optional Plans Law, Act of April 13, 1972, No. 62, *as amended*, 53 P.S. §§1-101—1-1309.

[6] The county is granted this power pursuant to Section 2193 of the Second Class County Code, Act of July 28, 1953, P.L. 723, *as amended*, 16 P.S. §5193 which provides in relevant part: "The County . . . shall have [the] power to erect, operate and maintain suitable buildings for garbage and incinerating furnaces. . . ." Although Delaware County is now a Home Rule Charter County, it continues to possess this power pursuant to the Delaware County Home Rule Charter, 323 Pa. Code §201, which provides, in part, that "[t]he county shall continue to possess all powers now vested in it by law. . . ."

domain to acquire property for this purpose.[7] However, as previously noted, this power of eminent domain does not necessarily indicate a legislative intent that the County may override local zoning regulations. After carefully reviewing all applicable statutes, we can find no provision to determine an express legislative intent as to the priority of these governmental entities. Therefore, we must turn to the satutory construction rule as the Supreme Court did in *Ogontz*.

The Statutory Construction Act, 1 Pa. C. S. §1921(c)(6) provides that "[w]hen the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters the consequences of a particular interpretation." If Delaware County would be allowed to construct and operate this facility, it would frustrate Middletown Township's zoning scheme in this case and in every other case involving a County land use plan conflicting with a Township plan. The Township obtains a specific grant of authority to enact zoning ordinances from the Pennsylvania Municipalities Planning Code.[8] If we were to allow the County to frustrate the Township's zoning scheme, the purpose of the Municipalities Planning Code would be thwarted. However, if Middletown Township would be allowed to enforce their zoning regulations the County would only lose the one use of this particular location in the Township.

Of course, the legislature shall continue to have the power to supersede local land use regulations by passing legislation to that effect. Accordingly, we

---

[7] "The county may acquire by . . . eminent domain real property within the county for the purpose of erecting thereon garbage disposal plants or facilities. . . ." 16 P.S. §5193.

[8] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101-11202.

reverse the order of the lower court in the instant case.

ORDER

AND Now, December 24, 1984, the order of the Court of Common Pleas of Delaware County, dated February 7, 1984, is reversed.