## Libertae, Inc. v. Bensalem Township Zoning Hearing Board

*Samuel B. Hornstein,* for plaintiff.

*Emil F. Toften,* for defendant Bensalem Township Zoning Hearing Board.

*Henry F. Huhn,* for intervenor Bensalem Township.

*James M. McNamara, assistant county solicitor,* for Bucks County.

*Elliot Olen,* for petitioner Coves Civil Association.

GARB, *P.J.*, October 7, 1985—This is an appeal by Libertae, Inc., a not-for-profit corporation, from the decision of the Zoning Hearing Board of Bensalem Township upholding a violation notice issued by the township's zoning officer.

On August 4, 1981, an application for a special exception was granted by the zoning hearing board to allow Libertae to operate a residential convalescent care center for 16 women alcoholics. The premises are located at 5245 Bensalem Boulevard, Bensalem Township, in a district zoned R-1 residential.[1] The facility consists of a three-story dwelling previously occupied as a nursing home.

On March 10, 1982, the zoning officer issued a violation notice citing Libertae for accepting residents who were female offenders serving sentences in the Bucks County correctional system. In the appeal before the zoning hearing board, a contract was received between Libertae and the County of Bucks, dated February 17, 1982, in which Libertae agreed to provide alcoholic treatment services to female offenders. The agreement makes possible the offenders' participation in a work-release program while using Libertae as their residence. The county intervened as an appellant before the board and in the present appeal. Bensalem Township and Coves Civic Association were permitted to intervene in support of the board's decision.

In its decision, the zoning hearing board concluded that "the housing of women prisoners from the Bucks County Department of Correction on work-release programs, is not a use permitted under the Zoning Ordinance of Bensalem Township in a R-1

---

1. The Nockamixon-Bucks Industrial and Commercial Development Authority holds legal title to the premises. Libertae is the beneficial owner.

zoning district, nor is it permitted under the special exception granted by the Zoning Hearing Board of Bensalem Township on August 4, 1981 to the appellant."

The issue in this case, as addressed by the parties and the intervenors, is whether Libertae's acceptance of women offenders as residents is in violation of the Bensalem Township Zoning Ordinance of 1954, as amended. Section 301 of the ordinance, which is incorporated by reference in section 401 referable to R-1 districts, contains a provision proscribing "correctional penal institutions." The special exception granted to Libertae was authorized as a "convalescent home" use under section 301(a).

Since no evidence was taken on appeal, our scope of review is circumscribed by the record before the zoning hearing board. We must affirm unless there was an error of law or a manifest abuse of discretion. See Appeal of Rizzone, 88 Pa. Commw. 502, 490 A.2d 26 (1985). Having reviewed this case, we decide that the board did abuse its discretion and, accordingly, we reverse.

The board in its decision found as a fact that any person enrolled in Libertae must have a primary addiction of alcoholism and must comply with Libertae's rules. Nevertheless, it determined that as a result of the agreement with the county "to provide community-based, work-release services for female offenders who are involved in the judicial and correctional system . . . ," Libertae had taken on the characteristics of a "correctional penal institution." This analysis misperceives the nature of the offender's transfer from the correctional system to Libertae, and it mislabels the institutional consequences to Libertae as a treatment-service provider.

An act of assembly, originally adopted in 1963, authorizes certain persons undergoing county jail sentences to be released by court order "for the purpose of working at [their] employment . . . , attendance at an educational institution, securing medical treatment or such other lawful purposes as the court shall consider necessary and appropriate." Act of August 13, 1963, P.L. 774, §1, as amended, 61 P.S. §2129. See 42 Pa.C.S. §9755(g). Under these provisions, sentenced offenders are not only permitted to go on work-release but also may be committed to drug, alcohol, and other residential-treatment facilities and receive credit on their sentences for the time incurred while so committed. In this sense, a sentenced person who is in release status is still undergoing a sentence and is subject to the law prohibiting absconding and escape. See Com. v. Hearn, 14 Bucks Co. L. Rep. 167, 34 D.&C.2d 49 (1964). In the present case, he is also subject to the rules of conduct and reporting requirements of the Bucks County Department of Correction applicable to all inmates in the work-release program.

However, from the standpoint of the treatment provider, such as Libertae, or of a school in which he is a student, or of an employer, the released person is virtually indistinguishable from someone not involved in the correctional system. For the intended purpose, he is completely released from the terms of his confinement. Only if he breaches the purpose of his release or fails to return upon the termination of his release is he subject to sanctions by reason of his sentenced status.

Similarly, given the facts presented here, Libertae is not thereby transformed from a halfway house for recovering alcoholic women into a correctional or penal institution. The mere admission of women of-

fenders who are released by court order from the county jail to be treated for alcoholism does not produce that result. The sentencing judge, the department of correction and Libertae all must be satisfied that the candidate deserves the opportunity for treatment and will not be a serious risk to the public or to herself.

In Bucks County and in many other places, commitment of offenders, both adult and juvenile, to various treatment facilities as a part of their sentences has been an accepted practice for a number of years. Work-release of suitable inmates has also gained increasing acceptance. Nothing in the law or in fact suggests that treatment providers or employers who take in persons on correctional release are therefore cast in the role of penal institutions or prison custodians.

In the present case, Libertae's practices and procedures were unaffected by its acceptance of women offenders on release status. It continued to be an open setting, with no guards or custodians. Other residents also worked off-premises. There was no control by the county prison board, which governs the requirements of the county's correctional institutions. Act of January 25, 1966, P.L. 1577 (1965), § 1, as amended, 61 P.S. §408. The only difference was the publicity about its servicing a women's work-release program.

In this regard, the board's decision stresses the point that the county entered into the agreement with Libertae in order to comply with a federal court order mandating a work-release program in Bucks County for women. It argues, inferentially, that the dominant purpose of the agreement was, therefore, not alcoholic treatment but work-release. It discounts the enforceability of a letter from the then chairman of the county commissioners, dated April

2, 1982, stating that the agreement with Libertae was limited to placement of two women offenders at any given time.[2]

The county's reasons or motives for entering into the residential placement agreement with Libertae are immaterial. The issue is, what are the effects and consequences of the program on Libertae and on the community? Our decision is based on the representation that at any particular time there will be only two women offenders on release commitment to Libertae and that the effects on Libertae will continue to be de minimis. Although much of the logic of this opinion would apply regardless of the number or proportion of women serving their sentences at Libertae, the wholesale use by the county of any facility as an alternative to imprisonment could raise questions that are not evident in the present facts. This opinion is limited to those facts, including a maximum utilization by the county correctional system of two Libertae placements.[3]

---

2. The letter states, in part: "I am very sorry that the presence of two additional women at the Libertae program has caused concern in the neighborhood, but unfortunately it is simply not possible to place every social-service project in an abandoned area, vacant lot, open farm field or some location far away from public transportation and employment opportunities."

3. As to policy considerations, the county and Libertae suggest that the county is entitled to categorical preemption of local zoning laws because it is a superior political subdivision. This type of argument has now been laid to rest. Commonwealth Department of General Services v. Ogontz Area Neighbors Association, 505 Pa. 614, 483 A.2d 448 (1984); Township of Middletown v. County of Delaware, 86 Pa. Commw. 501, 485 A.2d 535 (1984). In view of our decision on the issues presented, we did not reach the effect, if any, of county government versus municipal government.

For the reasons discussed above, we entered the following

## ORDER

And now, this October 7, 1985, the decision of the zoning hearing board of Bensalem Township upholding the violation notice of March 10, 1982 is reversed.