511 A.2d 811

**COUNTY OF DELAWARE, Appellant,**

v.

**The TOWNSHIP OF MIDDLETOWN, et al., Appellees.**

Supreme Court of Pennsylvania.

Argued Dec. 2, 1985.

Decided June 27, 1986.

Francis P. Connors, Sol., for appellant.

William H. Lamb, John D. Snyder, West Chester, for Tp. of Middletown.

Bruce W. Kauffman, Sheryl L. Auerbach, Paul S. Diamond, Philadelphia, for amicus—Montgomery Co.

Thomas L. Wenger, Harrisburg, for amicus—Pa. State Assn. of Tp. Supervisors.

Richard C. Sheehan, Audubon, for amicus—Lwr. Providence Tp.

Arthur Lefkoe, Norristown, for amicus—Plymouth Tp.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## OPINION

ZAPPALA, Justice.

The County of Delaware appeals by allowance a decision of the Commonwealth Court, 86 Pa.Cmwlth. 501, 485 A.2d 535, holding that the County is subject to the zoning ordinance of Middletown Township with regard to a proposed solid waste disposal facility.

The County proposes to construct a plant for the conversion of solid waste to energy on a 212 acre parcel of land which it owns in Middletown Township. As successor to the Institution District of Delaware County, the County operates the Fair Acres Geriatric Center Complex on this site. The essence of the County's plan is to use the energy generated by the proposed conversion plant to heat and cool the Geriatric Center, thereby reducing the cost of producing energy from fossil fuels and the amount of solid waste which must be transported to approved landfill sites. In June of 1983 the Township formally advised the County of its objections to the proposed plant and its opinion that the proposed use would violate the Township's zoning ordinance. The County filed an action for Declaratory Judgment claiming that it was not subject to the zoning ordinance or other permitting requirements of the Township.

The Court of Common Pleas of Delaware County held that this Court's decision in *Middletown Township v. Delaware County Institution District*, 450 Pa. 282, 299 A.2d 599 (1973) controlled the case at bar. That case, involving the same property, established that the Institution District was not subject to the height restrictions of the Township zoning ordinance in constructing a new facility at the Geriatric Center. We found that the Township's zoning power, derived from the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, art. I, § 101 et seq., 53

P.S. § 10101 et seq., was circumscribed by Section 702 of the Second Class Township Code, Act of May 1, 1933, P.L. 103, art. VII, § 702, cl. LXII, added August 27, 1963, P.L. 1280, 11, 53 P.S. § 65762. Section 702 provides that "[n]o ordinance, by-law, rule or regulation shall be adopted which in any manner restricts, interfers [sic] with, hinders or affects the operation of any other political subdivision or instrumentality of the Commonwealth of Pennsylvania." This provision was characterized as demonstrating "a definite intent to liberate 'other political subdivisions' of the Commonwealth from the restrictions of local township zoning ordinances." 450 Pa. at 289, 299 A.2d at 603.

Common Pleas Court also relied on *City of Pittsburgh v. Commonwealth of Pennsylvania*, 468 Pa. 174, 360 A.2d 607 (1976), noting that in that case we cited the *Middletown Township* case as one in which legislative intent was used to determine if the institution district was subject to local zoning regulations. Applying the *City of Pittsburgh* "balancing test" the court held that "a statute can over-ride a municipality's zoning ordinance by inclusion of the power of eminent domain to the state agency or by clear language showing such over-riding intent." Slip opinion at 9. Finding such a grant of eminent domain power to the County and noting the County's area-wide waste disposal obligations under the Solid Waste Management Act of 1968, the court struck the balance in favor of the County's powers over the zoning power of the Township.

On appeal, Commonwealth Court agreed with the Township that because it is now a home rule municipality, having adopted a charter pursuant to the Home Rule Charter and Optional Plans Law, Act of April 13, 1972, No. 62 §§ 101–1309, 53 P.S. §§ 1–101—1–1309, in 1978, its governing powers are no longer subject to the limitations contained in Section 702 of the Second Class Township Code. The court then followed the rationale of this Court's most recent case involving a conflict between a municipality's zoning power and the authority of another Commonwealth

agency, *Commonwealth of Pennsylvania, Department of General Services v. Ogontz Area Neighbors Association*, 505 Pa. 614, 483 A.2d 448 (1984). In *Ogontz* we overruled *City of Pittsburgh* insofar as it held that the grant of eminent domain power could be taken as an indication of legislative intent that the agency granted that power could override local zoning regulations. *Id.*, 505 Pa. at 626, 483 A.2d at 454. The court determined that it could discern neither an express intent nor an implicit intent of the legislature that the County may override local zoning regulations. Comparing the consequences of the competing interpretations, the court found it more compatible with the powers granted to both the County and the Township to enforce the Township's zoning regulations.

■ In general it is true that the adoption of a home rule charter acts to remove a municipality from the operation of the code provisions enumerating the powers of that particular class of municipality. Whereas previously the law held that municipalities were merely agencies instituted by the sovereign and exercising only those powers specifically granted to them, see e.g. *Philadelphia v. Fox*, 64 Pa. 169 (1870), under the present Constitution and implementing legislation, "[a] municipality which has a home rule charter may exercise any power or perform any function not denied by this Constitution, by its home rule charter or by the General Assembly at any time." Pa. Const. Art. 9, § 2. See also 53 P.S. § 1–301. Furthermore, "[a]ll grants of municipal power to municipalities governed by a home rule charter under this act, whether in the form of specific enumeration or general terms, shall be liberally construed in favor of the municipality." 53 P.S. § 1–301. In analyzing a home rule municipality's exercise of power, then, we begin with the view that it is valid absent a limitation found in the Constitution, the acts of the General Assembly, or the charter itself, and we resolve ambiguities in favor of the municipality.

■ In the present case, there is no claim that a constitutional provision prevents the Township from enforcing its zoning ordinance against the County. The principal argument of the County is that the Home Rule Charter and Optional Plans Law itself limits the Township's powers with respect to zoning. Section 1–302(a)(10) provides that

[w]ith respect to the following subjects, the home rule charter ... shall not give any power or authority to the municipality contrary to, or in limitation or enlargement of powers granted by acts of the General Assembly which are applicable to a class or classes of municipalities:

... (10) Municipal planning under the provisions of the act of July 31, 1968 (P.L. 805, No. 247) known as the "Pennsylvania Municipalities Planning Code."

53 P.S. § 1–302(a)(10) (Supp.1985). Although the Municipalities Planning Code contains no explicit provision limiting the applicability of municipal zoning ordinances against other political instrumentalities, the County directs our attention to Section 103 wherein it is stated that "[t]he provisions of other acts relating to municipalities and townships are made a part of this act and this code shall be construed to give effect to all provisions of other acts not specifically repealed." 53 P.S. § 10103. It is argued that Section 702 of the Second Class Township Code is such an "other act relating to ... townships ... made a part of [the Municipalities Planning] act". It thus acts as a limitation on home rule charter communities by way of the zoning limitation section of the Home Rule Charter Law.

We agree with this argument. Even with their expanded autonomy, home rule municipalities must act according to the parameters set by the legislature in the Home Rule Charter Law. To paraphrase § 1–302(a)(10), the municipal planning power which the home rule charter shall not enlarge, limit, or contradict, is that applicable to the class of municipality of which Middletown Township would be a member but for the adoption of a home rule charter. In *Middletown Township v. Delaware County Institution District,* we observed that the Municipalities Planning Code

was "intended merely as a continuation of The Second Class Township Code," 450 Pa. at 289, 299 A.2d at 603. Accordingly, we held that a second class township's zoning powers are circumscribed by the limitation contained in 53 P.S. § 65762.[1] Because a home rule charter may not enlarge this power, all municipalities with population density less than 300 persons per square mile are of the same status for purposes of municipal planning, that is, they are prohibited from adopting any zoning ordinance, by-law, rule or regulation "which in any manner restricts, interferes with, hinders or affects the operation of any other political subdivision or instrumentality of the Commonwealth of Pennsylvania."

In *Ogontz* we analyzed the enabling statutes of competing political instrumentalities to determine the legislative intent as to which should prevail. Finding no explicit expression of legislative intent we resorted to the rules of statutory construction. In the present case we need not engage in statutory construction because the legislature has given express indication that second class townships are to adopt no ordinance interfering with the operation of other Commonwealth instrumentalities and, at least with respect to municipal planning, home rule second class townships are similarly bound. Although in *Ogontz* we anticipated that a clear expression of intent would take the form of a larger *grant* of power to one instrumentality, the effect is the same where the legislature, as here, instead withholds a measure power from another instrumentality. We emphasize that our decision affects only the zoning power of the township under the Municipalities Planning Code, which the General Assembly has specifically provided shall not infringe the operation of another political subdivision. Based

---

**1.** Arguments as to the fairness of the restrictions of Section 702 of the Second Class Township Code, which have no counterpart in any of the codes applicable to other classes of municipality, are better directed to the legislature than the courts. The Pennsylvania Constitution empowers the Legislature "to classify counties, cities, boroughs, school districts, and townships according to population, and all laws passed relating to each class ... shall be deemed general legislation within the meaning of this Constitution." Art. 3, Sec. 20.

on this finding, the Order of the Commonwealth Court must be reversed.

It is so ordered.

PAPADAKOS, J., filed a dissenting opinion in which LARSEN, J., joined.

PAPADAKOS, Justice, dissenting.

I dissent. I would affirm on the Opinion of Commonwealth Court authored by the Honorable James Gardner Colins entered in this case and reported as *Township of Middleton v. County of Delaware*, 86 Pa.Cmwlth. 501, 485 A.2d 535 (1984).

LARSEN, J., joins this dissenting opinion.