513 A.2d 508

Butler Township Board of Supervisors, Petitioner *v.* Commonwealth of Pennsylvania, Department of Environmental Resources, Respondent.

Borough of Ashland, Petitioner *v.* Commonwealth of Pennsylvania, Department of Environmental Resources, Respondent.

240

Argued September 9, 1985, before Judges CRAIG and DOYLE, and Senior Judge BLATT, sitting as a panel of three.

*Michael Q. Davis, Campbell, Spitzer, Davis & Turgeon,* for petitioner, Butler Township Board of Supervisors.

*Joel R. Burcat,* with him, *Jan P. Paden, Rhoads & Sinon,* for petitioner, Borough of Ashland.

*James D. Morris,* Assistant Counsel for respondent.

*Paul Domalakes,* with him, *John Domalakes, Rubright, Domalakes, Troy & Miller,* for intervenors, Frackville Area Municipal Authority (FAMA) and Borough of Frackville.

OPINION BY JUDGE BLATT, July 25, 1986:

The Borough of Ashland (Ashland) and the Board of Supervisors of Butler Township, Schuylkill County (Butler)[1] appeal here a decision and order of the Environmental Hearing Board (Board)[2] dismissing Butler's ap-

---

[1] Butler is a duly organized township of the second class. Ashland is located to the west of Butler and the Ashland Reservoir (Reservoir) is located in Butler, west of Frackville Borough (Frackville) and north of the Little Mahanoy Creek (Little Mahanoy).

[2] Butler was the only entity named in the order to appeal to the Board, although Ashland was granted intervenor status for those proceedings. Upon petitioners' motion, these cases were consolidated for briefing and filing of the reproduced record by Order of this Court, and we will address them jointly.

peal from an order of the Department of Environmental Resources (DER) which requires Butler and several surrounding municipalities and authorities[3] to enter into an agreement to provide for the construction of a regional sewage treatment plant at a specific site within Butler's boundaries (Site 1).

The Frackville Area Municipal Authority (FAMA)[4] is a regional municipal authority formed by Frackville to construct and operate sewage collection and treatment facilities to serve Frackville, sections of Butler and sections of West Mahanoy. In 1980 FAMA commissioned a study to examine the existing and proposed waste water collection and treatment facilities in Frackville and the surrounding municipalities. The study considered the collection and treatment needs of Frackville, Butler and West Mahanoy on a comprehensive basis, including a cost analysis of sewering Frackville and sections of Butler and West Mahanoy in relation to ultimate sewage treatment and disposal. Two possible sites were eventually identified for placement of a sewage treatment plant. Site 1, a 7.835 acre partially-wooded parcel in Butler, is in a woodland-conservation district under Butler's zoning ordinance. This Court previously affirmed the denial of a request by FAMA for a variance to permit it to construct a treatment plant there. *Frackville Area Municipal Authority v. Zoning Hearing*

---

[3] The following municipalities were named in DER's order: Frackville Borough, Butler and West Mahanoy Township (West Mahanoy). The order also named the Frackville Area Municipal Authority (FAMA) and a Butler Township Sewer Authority, as subject thereto. As noted by the Board, however, there is no Butler Township Sewer Authority and Butler has no such municipal authority. We also note that Butler has declined an offer to join FAMA.

[4] FAMA was also granted intervenor status before the Board and it has intervened in both of the cases presently before us.

*Board of Butler Township,* 69 Pa. Commonwealth Ct. 416, 451 A.2d 564 (1982) *(Frackville).* Site 2 is located in Gilberton and the study recommended that the plant be built there, partially because of the opposition which developed to the selection of Site 1.

Frackville's existing sewage collection system is aged and deteriorated. Currently, FAMA collects inadequately treated or untreated sewage from portions of Frackville, Butler and West Mahanoy and conveys it by means of a pumping station over Broad Mountain, where it flows downhill into an abandoned mine pit. The pumping station occasionally fails or overflows due to storm water inflows which exceed the pump's capacity, resulting in an overflow of inadequately treated or untreated sewage into the Little Mahanoy, a local creek. Neither Frackville, Butler nor West Mahanoy now has a complete sewer system sufficient to collect and convey all of the sewage from each municipality to the pumping station.

Pursuant to the Pennsylvania Sewage Facilities Act (SFA),[5] Frackville, Butler and West Mahanoy previously adopted official sewage facility plans which were approved by DER.[6] DER preliminarily considered the official sewage plans of Frackville, Butler and West Mahanoy. Frackville's plan proposed the maximum use of existing facilities for collection with increased capacity at the present pumping station, and would purportedly enable collection from the areas now served by

---

[5] Act of January 24, 1966, P.L. (1965) 1535, *as amended,* 35 P.S. §§750.1—750.19.

[6] These plans were originally components of a comprehensive regional approach to the northern Schuylkill County waste water management problem, but after certain other municipalities, not involved here, withdrew their participation, the comprehensive plan was not implemented; hence the parties here were required to reorganize their plans.

FAMA. Frackville proposed to replace the combined sewers in the north drainage area to attempt to reduce the need for pumping by eliminating the inflow of storm water.

West Mahanoy currently has collection lines which drain into Frackville's system, and its official plan proposes construction of a separate collection system for one of its sections which would discharge into Frackville's collection system.

Butler's official sewage plan proposes to install collection lines throughout that township, including a portion now served by FAMA.

FAMA has secured funding from the federal government in the form of grants and loans from the Farmer's Home Administration and the Appalachian Regional Council which cannot be used for a plant at any site other than Site 1. The total capital cost of a treatment plant at Site 2 would be approximately eight per cent greater than at Site 1, and Site 2 will also require the construction of a lengthy discharge pipe, which will presumably increase the cost disparity. It further appears that construction and operation of a treatment plant at Site 1 would be environmentally safe and would not endanger the water supply of the Reservoir, absent the simultaneous occurrence of extremely unlikely events.[7]

A plant at Site 2 will discharge into another local creek. It will require that eighty per cent of the collected sewage be pumped up a mountainside, the construction of a large discharge pipe across extensive terrain to

---

[7] Specifically, a total electrical failure coupled with a total backup system failure during a rainstorm of as yet unrecorded proportions at a time when the Little Mahanoy sluiceway which carries the Little Mahanoy around the Reservoir, is blocked for a lengthy period. Even then, the Reservoir would be safe unless there would be a failure to detain sewage in the plant.

the creek, the purchase of several parcels of land and the construction of a supplementary pump station at Site 1 to allow the sewage from the sections which are within FAMA to be conveyed to the plant.

Our review of the Board's order is limited to determining whether or not its findings of fact are supported by substantial evidence, an error of law was committed or constitutional rights were violated. *Ramey Borough v. Department of Environmental Resources*, 466 Pa. 45, 351 A.2d 613 (1976).

The petitioners primarily contend that, in performing its duties under the Clean Streams Law (CSL)[8] and the SFA, DER is without authority to preempt Butler's local zoning ordinance, and in support of this argument they cite our Supreme Court's decision in *Department of General Services v. Ogontz Area Neighbor's Association*, 505 Pa. 614, 483 A.2d 448 (1984).[9]

Our Supreme Court's recent decision in *County of Delaware v. Township of Middletown*, 511 Pa. 66, 511 A.2d 811 (1986) requires, however, that we reject this contention. The Court held there that *Ogontz* does not affect the limitations imposed on second class townships by Section 702 of the Second Class Township Code,[10] which prohibits such municipalities from adopting any zoning ordinance which would restrict, hinder, interfere with

---

[8] Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. §§691.1-691.1001.

[9] Although the petitioners' brief contains allegations on this issue relating to both the SFA and the CSL, no specific citation is made to either statute. Our review of these statutes reveals no specific provision of the CSL relating to the official sewage facilities plans. Our review of the CSL, moreover, satisfies us that, on this record, DER has met its obligations under that statute. Accordingly, we will restrict our discussion of this issue to the SFA.

[10] Section 702 of the Act of May 1, 1933, P.L. 103, *added by* Section 1 of the Act of August 27, 1963, P.L. 1280, 53 P.S. §65762.

or affect the operation of an other political subdivision or instrumentality of the Commonwealth, such as DER in this matter. Accordingly, no challenge to the DER order may be raised here in reliance upon Butler's zoning ordinance.

The petitioners also contend that DER's order constitutes an unconstitutional infringement on the powers of the judiciary and an impermissible collateral attack on our previous decision and final order in *Frackville.*

The elements necessary for applying collateral estoppel are:

> (1) the issue decided in the prior adjudication was identical with the one presented in the later action, (2) there was a final judgment on the merits, (3) the party against whom the plea is asserted was a party or in privity with the party to the prior adjudication, and (4) the party against whom it is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

*Baker v. Pennsylvania Human Relations Commission,* 75 Pa. Commonwealth Ct. 296, 307-08, 462 A.2d 881, 887 (1983) (citations omitted).

DER, however, was not a party to the preceding action in *Frackville,* nor is it a successor in interest to FAMA. It is apparent, therefore, that the parties lack the requisite identity of parties. Moreover, the issue in *Frackville* concerned whether or not FAMA was entitled to a special exception or a variance under Butler's zoning ordinance. Presently, we have ruled that DER is not bound by that ordinance in performing its duties under the CSL and the SFA and we have before us an appeal from DER's order under those statutes. Clearly, there is no identity of issues and DER's order is neither barred by collateral estoppel nor does the fact that DER designated FAMA to implement its directions infringe

upon our previous order in *Frackville*. Consequently, we must reject the petitioners' argument on this point.[11]

The petitioners next contend that DER's order conflicts with our decision in *Payne v. Kassab*, 11 Pa. Commonwealth Ct. 14, 312 A.2d 86 (1973), *aff'd*, 468 Pa. 226, 361 A.2d 263 (1976), which established a three-part test to determine the propriety of development subject to the provisions of Article I, Section 27 of the Pennsylvania Constitution.[12] *Payne* first requires that the order must be in compliance with all applicable statutes and regulations relevant to the protection of the Commonwealth's public natural resources. The petitioners argue that the DER order is defective because it conflicts with Butler's zoning ordinance and, therefore, the Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10101-11202. As we already determined, however, DER is not bound here by Butler's zoning ordinance.

The petitioners also allege statutory violations related to the SFA, premised upon DER's previous acceptance of Butler's official sewage facility plan, which pro-

---

[11] This reasoning applies as well to the provisions of Butler's zoning ordinance restricting building in a one hundred year flood plain. And, even though the Board's adjudication of this issue was premised on different grounds, we may affirm, nonetheless, under *County of Delaware*. Where, as here, incorrect reasoning is used to reach a correct result, we may affirm if the correct basis for decision is clear on the record. *Haney v. Workmen's Compensation Appeal Board*, 65 Pa. Commonwealth Ct. 461, 442 A.2d 1223 (1982).

[12] Article I, Section 27 states:

The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all of the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

vides for construction of a plant at Site 2. It is argued that construction at Site 1 will result in a violation of DER's responsibility to require construction in conformity to duly filed and accepted sewage facility plans. Section 5(a) of the SFA, 35 P.S. §750.5(a), relating to official plans, pertinently provides, however, that

> *Each municipality shall submit to the department [DER] an official adopted plan for sewage services* for areas within its jurisdiction within such reasonable period as the department may prescribe, *and shall from time to time submit revisions of such plan as may be required* by rules and regulations adopted hereunder or *by order of the department. . . .* (Emphasis added.)

Our study of these provisions convinces us that the petitioners' argument on this point is without merit. We discern nothing in this statute indicating that DER may not require a municipality to revise such a plan. It would, we believe, be contrary to the statute's express provisions to say that it precludes DER from requiring such a revision, and we, therefore, will not do so.

The petitioners next argue that there is no evidence reflecting compliance with the second *Payne* requirement that the record must demonstrate a reasonable effort to reduce to a minimum the environmental effects of such a project. They contend that the proximity of Site 1 to a reservoir and the absence of a source of public drinking water in the vicinity of Site 2 demonstrate that DER has not made any reasonable effort to minimize the environmental incursion in ordering construction at Site 1. They also argue that construction at Site 1 will be environmentally harmful but that no such harm would be caused by construction at Site 2. Contrary to these assertions, however, we agree with the

Board which found[13] that DER had made a thorough study of all available sites for a regional sewage treatment facility and that, on environmental and economic considerations, Site 1 was the only feasible site. We also note that the Board also made numerous other findings of fact, relating to DER's environmental studies of the area around Site 1, with regard to construction and operation of the proposed plant. In the Discussion section of its adjudication, moreover, the Board stressed its concerns about ending the current problems of raw sewage discharge into the Little Mahanoy and into the abandoned mine pit.

Our review of the record, therefore, convinces us that DER is clearly committed to reasonable efforts to minimize the present and future environmental damage associated with this project, and we must consequently reject the petitioners' argument that the environmental harm which will result from the challenged decision will outweigh the benefits to be derived therefrom, in violation of the third *Payne* requirement.

We must also note that the Board, in its fact-finding capacity, rejected the testimony upon which the petitioners' argument depends. Furthermore, we also agree with the Board that the balancing of environmental harm and benefits resulting from construction of the project at Site 1 was thoroughly reviewed by the trial court in *Frackville*.[14] Under such circumstances, we

---

[13] The Board's Finding No. 55 reads as follows:

In preparing and issuing its order, DER considered twenty-one (21) alternate sites for a proposed regional sewage treatment facility, including [Sites 1 and 2].

[14] Judge (now President Judge) HEFFNER stated there that FAMA clearly demonstrated that Site 1 was the most feasible from an environmental as well as economical viewpoint and that the plant would be beneficial to the residents of the municipalities involved, because such use of the site would aid in terms of employ-

must hold that the environmental benefits to be gained by implementation of DER's order unquestionably outweigh the environmental harm and adverse effects, if any, from locating the plant at Site 1.

We conclude, therefore, that DER's order is in full compliance with the dictates of *Payne* and, therefore, does not violate Article I, Section 27 of the Pennsylvania Constitution.

We must also reject the petitioners' further contention that DER's order is flawed, ambiguous and self-contradictory and, therefore, void on its face. We agree with the Board that DER's order in this matter is clear and unambiguous. It requires the governmental entities concerned to negotiate and execute a satisfactory and acceptable agreement to provide for the implementation of each municipality's official plan within a regional sewage collection and treatment concept.[15] We believe that it has harmonized the individual official plans to the extent possible within that regional concept and has adequately informed the parties of their responsibilities.

Despite the petitioners' contrary contentions, we further believe that Section 203(b) of the CSL[16] does

---

ment and would eliminate a number of existing pollution problems caused by raw sewage. *See Frackville Area Municipal Authority v. Zoning Hearing Board of Butler Township,* 77 Sch. L. R. 102, 104 (1982). Of course, Judge HEFFNER's opinion was based upon the record before him and not upon the record here. Based upon the record before this Court, however, we believe that his opinion accurately depicts the circumstances in the matter *sub judice.*

[15] The Board specifically found (Findings of Fact Nos. 18 through 40) that DER's order allows for implementation of each municipality's official plan.

[16] 35 P.S. §691.203(b), which pertinently provides that

[DER] may issue appropriate orders to municipalities where such orders are found to be necessary to assure that there will be adequate sewer systems and treatment facilities to meet present and future needs or otherwise to

provide DER with the authority to issue the order under review, and, consequently, that it did not exceed its statutory authority in ordering the plan to be built at a specific location. In finding authority for DER to order several municipalities to agree on a regionalized treatment plant, our Supreme Court has indicated that Section 203(b) is to be construed expansively. *Department of Environmental Resources v. Derry County*, 466 Pa. 31, 351 A.2d 606 (1976). In *Derry County*, the Supreme Court noted that Section 203(b) invests DER with the authority to order municipalities to take steps necessary to eliminate sewage pollution in streams, lakes and rivers. Consistent with such an interpretation, we believe that the legislature similarly intended to empower DER to order construction at a specific site where, as here, such an order is warranted by the circumstances.

Finally, in light of our disposition of their previously-stated contentions, we will also reject the petitioners' assertion that DER's order is unsupported by law or fact and wholly predicated upon erroneous considerations so as to constitute an abuse of discretion. Where, as here, substantial evidence exists in the record to support the findings of fact, we will not interfere with the administrative fact-finder's resolution of evidentiary conflicts. *Marcon, Inc. v. Department of Environmental Resources*, 76 Pa. Commonwealth Ct. 56, 462 A.2d 969 (1983) and *Pawk v. Department of Environmental Resources*, 39 Pa. Commonwealth Ct. 457, 395 A.2d 692

---

meet the objectives of the act. Such orders may include, *but shall not be limited to,* orders requiring municipalities to undertake studies, to prepare and submit plans, to acquire, construct, repair, alter, complete, extend, or operate a sewer system or treatment facility, or to negotiate with other municipalities for combined or joint sewer systems or treatment facilities. . . . (Emphasis added.)

(1978). We have closely reviewed the numerous, detailed and comprehensive findings of fact rendered by the Board and the voluminous record in this case and find more than adequate substantial evidence in the record to support the Board's findings.

Accordingly, discovering no necessary findings of fact to be unsupported by substantial evidence, no errors of law and no constitutional violations, we will affirm the order of the Board.

ORDER

AND NOW, this 25th day of July, 1986, the order of the Environmental Hearing Board in the above-captioned matter is affirmed.