518 A.2d 258

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION**

v.

**John D. DiMASCIO, Building and Zoning Officer of the Township of Willistown, and Township of Willistown, Appellants.**

Supreme Court of Pennsylvania.

Argued Oct. 21, 1986.

Decided Dec. 4, 1986.

Mary Ann Rossi, Robert J. Shenkin, West Chester, for appellant.

---

Patricia Leisner Clements, Richard Sheenan, Audubon, for amicus—Lower Provident Township.

Jerome T. Foerster, Harrisburg, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON, ZAPPALA and PAPADAKOS, JJ.

## ORDER

PER CURIAM.

Order affirmed.

LARSEN, J., files a dissenting opinion.

LARSEN, Justice, dissenting.

I dissent to the majority's per curiam affirmance of the Commonwealth Court.

The Commonwealth of Pennsylvania, Department of Transportation (Penn DOT), appellee, was in the process of constructing a "Domar" building[1] for the storage of road salt in the Township of Willistown when appellants, the Township and its building/zoning officer, served upon Penn DOT a cease and desist order intended to stop further work on the project until a building permit had been applied for and issued in accordance with local zoning ordinances. Penn DOT then filed a petition for review addressed to the original jurisdiction of the Commonwealth Court seeking to enjoin appellees from interfering with the construction of the Domar building.

Appellants argued that Penn DOT is subject to its local zoning ordinances and that the Commonwealth Court should resolve any conflict between its authority to enact zoning ordinances and Penn DOT's authority to construct highway facilities by reference to this Court's decision in *Commonwealth, Department of General Services v.*

---

**1.** A "Domar" building is a teepee-shaped structure which allows access to the road salt while keeping it dry lest it dissolve and leach into the earth.

*Ogontz Area Neighbors Association,* 505 Pa. 614, 483 A.2d 448 (1984). In that case, we applied principles of statutory construction to the respective enabling legislation to determine the legislative intent, and we determined that the Department of Public Welfare was subject to the jurisdiction of the local zoning board, and that in case of conflict between DPW's land use plans and the local zoning scheme, the latter would prevail.

Penn DOT argued, however, that its legislative grant of authority unequivocally established that the General Assembly "has granted to Penn DOT a position of total preeminence over any of the various classes of municipalities in the Commonwealth." Brief for Appellee at 13.

The Commonwealth Court held that appellant's had *no authority* to regulate or restrict Penn DOT's use of its land within the Township of Willistown's boundaries, and enjoined appellants from interfering with the construction or use of the Domar building. That court did not reach the *Ogontz* issue or address Penn DOT's contention that it was totally exempt from land use regulations and zoning ordinances of all municipalities. Instead, it based its reasoning on section 702 of the Second Class Township Code, Act of May 1, 1933, P.L. 103, as amended, 53 P.S. § 65762, which provides in pertinent part:

No ordinance, by-law, rule or regulation shall be adopted which in any manner restricts, interferes with, hinders or affects the operation of any other political subdivision or instrumentality of the Commonwealth of Pennsylvania.

The Commonwealth Court held:

We note that the aforesaid Section 702 has previously been held to "liberate" other governmental entities of the Commonwealth from the restrictions of a local township's zoning ordinance. *Middletown Township v. Delaware County Institution District,* 450 Pa. 282, 287, 299 A.2d 599, 603 (1973). More recently, however, in a case concerning a similar conflict between a township's zoning ordinance and the plans of another Commonwealth instrumentality, this Court did not give effect to the provisions

of Section 702 relied upon in *Middletown*. The different result obtained in the later case *was attributable to the fact that the township had then acquired the status of a home rule community*. *Middletown Township Appeal*, 86 Pa.Commonwealth Ct. 501, 485 A.2d 535 (1984), *Petition for Allowance of Appeal* granted, 507 Pa. 561, 493 A.2d 78 (1985). Accordingly, the earlier *Middletown* case retains continued vitality where, as in the instant case, *the township in question has not elected home rule status and thus remains subject to the provisions of the Code.*

502 A.2d 324 (emphasis added).

I agree with appellants that section 702 creates arbitrary classifications and denies equal protection to second class non-home rule townships. As this Court stated in *Moyer v. Phillips*, 462 Pa. 395, 400–01, 341 A.2d 441 (1975):

> The Equal Protection Clause ... does not deny the state the power to treat different classes of persons in different ways, but does deny the right to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of the particular statute. The classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation so that all persons similarly circumstanced will be treated alike.

*See also Snider v. Thornburgh*, 496 Pa. 159, 166, 436 A.2d 593, 596 (1981). Moreover, legislative classifications based solely on status pose *serious* equal protection problems. *See, e.g., Carroll v. County of York*, 496 Pa. 363, 381–82, 437 A.2d 394, 403–04 (1981) (Larsen, J., dissenting).

In the instant case, second class non-home rule townships are singled-out by Section 702 solely on the basis of their status and are deprived of any authority to regulate land used by other governmental agencies within their borders. All other municipalities—boroughs, first class townships, cities and second class home-rule townships—may seek to

regulate land use and enforce zoning ordinances against other government agencies and, if such regulation or zoning scheme presents a conflict with an agency's authority or jurisdiction, may seek to adjudicate and resolve the conflict along *Ogontz* lines. Penn DOT's response to appellant's claim that "townships of the second class are being treated differently from other municipalities" is that "that ... is a matter for legislative attention." Brief for Appellant at 16. Penn DOT offers no basis for the distinction between second class non-home rule townships and all other municipalities. It appears that the classification created by section 702 is arbitrary and denies equal protection to appellants. Because the equal protection issue was not addressed by the Commonwealth Court and did not seem to be vigorously advocated by the parties below, however, I would remand this case to the Commonwealth Court for further proceedings and development of the record concerning the equal protection issue.