611 A.2d 322

NORRISTOWN FRATERNAL ORDER OF POLICE, LODGE
31, by Dennis RODEN, Trustee Ad Litem

v.

William DeANGELIS, Mayor, Borough of Norristown and Bor-
ough of Norristown and Rodney O'Neill, Alfred Ricci, Jean
Richet, Bruce Charles, David Green and Ralph Parente,

Appeal of Rodney O'Neill, Alfred Ricci, Jean Richet, Bruce
Charles, David Green and Ralph Parente, Appellants.

NORRISTOWN FRATERNAL ORDER OF POLICE, LODGE
31, by Dennis RODEN, Trustee Ad Litem

v.

William DeANGELIS, Mayor and William Bambi, Chief of Police
and Borough of Norristown and Rodney O'Neill, Alfred Ricci,
Jean Richet, Bruce Charles, David Green and Ralph Parente
and Norristown Civil Service Commission,

Appeal of Norristown Civil Service Commission, Appellant.

William DeANGELIS, Mayor; William Bambi, Chief of
Police; and Borough of Norristown, Appellants,

v.

NORRISTOWN FRATERNAL ORDER OF POLICE, LODGE
31, by Dennis RODEN, Trustee Ad Litem, Appellee.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 5, 1992.

Decided June 1, 1992.

Emeline L.K. Diener, for appellant Norristown Civil Service Com'n.

J. David Farrell, for appellee Norristown Fraternal Order of Police, Lodge 31.

John A. DiCicco, for appellees William DeAngelis, William Bambi and Borough of Norristown.

Richard M. Dunlevy, for appellees Rodney O'Neill, Alfred Ricci, Jean Richet, Bruce Charles, David Green and Ralph Parente.

Before CRAIG, President Judge, McGINLEY, J. (P.), and KELLEY, J.

CRAIG, President Judge.

In this consolidated appeal,[1] the Borough of Norristown, police officer intervenors O'Neill, Ricci, Richet, Charles, Green and Parente (intervenors), and the Norristown Civil Service Commission appeal an April 25, 1991 order of the Court of Common Pleas of Montgomery County.

This case presents the question of whether a home rule municipality remains governed by state law with respect to police appointments and promotions.

The confusing procedural history of this case is as follows. On July 20, 1990, the mayor and the chief of police "appointed" intervenors to police positions of a higher rank. Two individuals were "appointed" to the rank of lieutenant and four individuals were "appointed" to the rank of sergeant. Approximately three months later, on October 12, 1990, Lodge 31, Norristown Fraternal Order of Police (FOP) filed in the trial court a complaint entitled "Appeal Under Local Agency Law" which challenged the "appointments" made within the police department.

The borough filed a motion to quash the complaint on the basis of lack of jurisdiction which was dismissed by the trial court on December 11, 1990. The borough then filed preliminary objections alleging in part that the complaint did not properly seek equitable relief, there was no adjudication from which an appeal could be taken, and that the FOP lacked

---

1. The appeal of Rodney O'Neill, Alfred Ricci, Jean Richet, Bruce Charles, David Green and Ralph Parente is docketed at 1205 C.D.1991; the Norristown Civil Service Commission Appeal is at 1220 C.D.1991; and the appeal of the Borough of Norristown, William DeAngelis, Mayor, and William Bambi, Chief of Police is at 1229 C.D.1991.

standing. The trial court dismissed the preliminary objections.

Thereafter, the trial court held a preliminary injunction hearing on January 25, 1991. After the hearing, the trial court entered the first of four orders involved in this appeal. On February 13, 1991, the trial court entered an order which rescinded the July 1990 police department appointments and directed the civil service commission, not then a party to the action,[2] to post vacancies for the rank of lieutenant and sergeant and to conduct tests for the positions in accordance with the civil service rules and regulations. The trial court also entered an injunction directing that all future borough appointments and promotions comply with the civil service rules and regulations. No appeal was taken from this February 13, 1991 order.

On March 1, 1991, the trial court granted the Petition to Intervene filed by the police officers appointed to a higher rank, the intervenors. The borough then filed a petition for reconsideration, an amended petition for reconsideration and a petition to supplement the record to the February 13, 1991 order. On March 4, 1991, the trial court entered its second order, which denied and dismissed the borough's petitions but modified the February 13, 1991 order by declaring the promotions null and void, and by directing that the civil service commission consider the promotions by reference to the rules and regulations in effect at the time of consideration, that is, either the rules currently in effect or new rules which would be presented to the borough council the following day, March 5, 1991.

On March 15, 1991, new civil service rules and regulations were approved by resolution of the Norristown Borough Council. Thereafter, on March 11, 1991, the FOP filed a petition for reconsideration of the March 4, 1991 order of the trial court on the basis that the newly promulgated rules and

2. The trial court's direction to the civil service commission occurred before that entity's being a party to the proceeding. Later, on May 24, 1991, the civil service commission filed a Petition to Intervene, which was granted by the trial court.

regulations were not in compliance with the law. Specifically, the FOP raised objections that the new rules expanded the civil service commission from three to five members, did not provide for minimum passing grades for written examinations, and were not advertised as an ordinance by the borough in accordance with the Norristown Administrative Code and the law of this Commonwealth. By its third order, dated March 19, 1991, the trial court scheduled argument for April 22, 1991, on the FOP's petition for reconsideration.

Three days later, on April 25, 1991, the trial court issued its fourth and final order which rescinded the March 4, 1991 order and ordered that the civil service commission be directed by the already established rules in existence at the time of the appointments in July of 1990 because the newly created March 5, 1991 rules and regulations were null and void for failure to be advertised, failure to provide for a minimum passing grade, and for expansion of the civil service commission from three to five members. The borough, intervenors and the civil service commission have now appealed to this court.[3]

■ At issue is the propriety of the borough's appointment of the above-mentioned police officers to a higher rank in the police department without regard to civil service requirements. The civil service sections of the Borough Code (Code),[4] §§ 1171–1195, at 53 P.S. §§ 46171–46195, provides regulations for police and firemen. These regulations specify the manner of filling police force appointments, Code § 1184, 53 P.S. § 46184(a),[5] and indicate that promotions are to be

---

**3.** The appeals were consolidated by order of this court dated August 6, 1991.

**4.** Act of February 1, 1966, P.L. (1965) 1656, *as amended,* §§ 1171–1195, 53 P.S. §§ 45101–48501.

**5.** Section 1184(a) provides:
(a) (E)very original position of employment in the police force ... except that of chief of police ... shall be filled only in the following manner: the council shall notify the commission of any vacancy which is to be filled and shall request the certification of a list of eligibles. The commission shall certify for each existing vacancy from the eligible list, the names of three persons thereon, or a lesser number where three are not available, who have received the highest

based on merit examinations prescribed by the civil service commission, Code § 1188, 53 P.S. § 46188.[6]

■■■■ The statutory sections which provide that every position in a borough police department must be filled in a certain manner are mandatory requirements when a police officer is to be appointed or promoted. *Manning v. Civil Service Commission of Borough of Millbourne*, 387 Pa. 176, 127 A.2d 599 (1957). *Manning* requires strict compliance with civil service requirements for personnel actions as to borough police officers; substantial compliance is not enough. *Id.* See also *Swearer v. Karoleski*, 128 Pa.Commonwealth Ct. 335, 563 A.2d 586 (1989).

The borough maintains, however, that its status as a home rule charter municipality[7] under the Home Rule Charter and Optional Plans Law (Law), Act of April 13, 1972, P.L. 184, §§ 101–1309, *as amended*, 53 P.S. §§ 1–101–1–1309, precludes it from being bound by general civil service requirements for appointment of police officers. The question of whether a municipality's adoption of a home rule charter under the Law places borough police officers outside state civil service legislation providing protection to police officers is one of first impression[8] on the appellate level.

■■■■ In analyzing the borough's exercise of power as a home rule municipality, we begin with the presumption that the exercise is valid if no restriction is found in the Constitu-

average. The council shall thereupon, with sole reference to the merits and fitness of the candidates, make an appointment from the three names certified.... As each subsequent vacancy occurs in the same or another position precisely the same procedure shall be followed.

6. Section 1188 provides:
   Promotions shall be based on merit to be ascertained by examinations to be prescribed by the commission. (Civil Service) ...

7. The Borough of Norristown became a home rule municipality by adoption of a home rule charter on January 6, 1986.

8. This court has previously determined that a home rule city may not avoid the civil service statute with regard to new firemen positions. *See Fire Fighters Local Union No. 1 v. Civil Service Commission of City of Pittsburgh*, 118 Pa.Commonwealth Ct. 498, 545 A.2d 487 (1988), *aff'd per curiam*, 524 Pa. 278, 571 A.2d 377 (1990).

tion, the charter itself, or the acts of the General Assembly. *County of Delaware v. Township of Middletown,* 511 Pa. 66, 511 A.2d 811 (1986). Additionally, ambiguities are to be resolved in favor of the municipality. *Id.* However, "Even with their expanded autonomy, home rule municipalities must act according to the parameters set by the legislature in the Home Rule Charter Law." 511 Pa. at 71, 511 A.2d at 814.

■ Those legislative boundaries are found within the provisions of section 301, 53 P.S. § 1–301, of the Law and empower a municipality to exercise any powers and perform any functions "not denied by the Constitution of Pennsylvania, by its home rule charter or by the General Assembly at any time." Thus, the legislature did not intend to permit a home rule charter municipality to supersede state legislation.

Further, limitations on municipal powers are found in section 302, 53 P.S. § 1–302. This section provides:

No municipality shall ... (v) enact any provision inconsistent with any statute heretofore enacted[9] by the General Assembly affecting the rights, benefits or working conditions of any employe of a political subdivision of the Commonwealth. (Footnote added.)

By enactment of section 302, the legislature established an area in which its statutes would continue to control in all municipalities in the Commonwealth. Thus, through passage of the Law, the legislature did not intend to jeopardize existing statutory protections regulating police officer appointments. *See Fire Fighters Local Union No. 1 v. Civil Service Commission of City of Pittsburgh,* 118 Pa.Commonwealth Ct. 498, 545 A.2d 487 (1988), *aff'd per curiam,* 524 Pa. 278, 571 A.2d 377 (1990).

■ Having determined that the civil service provisions of the Code apply to the borough's appointment and promotion of police officers and having previously noted the required involvement of the civil service commission, we point out, procedurally, that the FOP, by filing an appeal directly to the trial

___

9. It is undisputed that the civil service regulations were enacted prior to the borough's adoption of its home rule charter.

court without a determination by the civil service commission, failed to exhaust administrative remedies.

Under the doctrine of exhaustion of administrative remedies, a party is required to exhaust all available administrative remedies before a right to judicial review arises. *St. Clair v. Pennsylvania Board of Probation and Parole*, 89 Pa.Commonwealth Ct. 561, 493 A.2d 146 (1985). The primary purpose of the exhaustion doctrine is to ensure that claims will be preliminarily heard by the body having expertise in the area. Thus, an adjudication by the civil service commission should have been made before an appeal could be taken by the FOP to the trial court. This doctrine is particularly important where the ultimate decision rests upon factual determinations, i.e., whether "promotions" occurred, whether they were temporary or permanent, etc., lying within the expertise of the commission. *Id.* Furthermore, the exhaustion doctrine affords the agency an opportunity to correct its own mistakes and to moot judicial controversies. *Id.*

As the Supreme Court has indicated:

[C]ourts should not presume futility in the administrative appeal; on the contrary, they should assume that the administrative process will, if given a chance, discover and correct its own errors.

*Canonsburg General Hospital v. Department of Health*, 492 Pa. 68, 74, 422 A.2d 141, 145 (1980), quoting B. Schwartz, Administrative Law § 172, at p. 499 (1976).

Because the FOP failed to exhaust administrative remedies, we and the trial court are foreclosed from review. *Id.; St. Clair. See also Shenango Valley Osteopathic Hospital v. Department of Health*, 499 Pa. 39, 451 A.2d 434 (1982).

As indicated above, the borough failed to comply with civil service commission regulations and the FOP made no attempt to invoke agency procedures to correct the problem. It is the civil service commission which should consider whether the police officer "appointments" made by the borough are positions which are actually permanent "promotions" in disguise. Because the civil service commission has developed an exper-

tise in adjudicating appointments, to allow judicial intervention before a determination by the commission would rob it of the opportunity to exercise its expertise.

Hence, we vacate the April 25, 1991 order of the trial court and remand this case to the trial court with a direction that such court remand the matter to the civil service commission for adjudication.

## ORDER

AND NOW, this 1st day of June, 1992, the order of the Court of Common Pleas of Montgomery County dated April 25, 1991 is vacated, and this matter is remanded with a direction to remand the matter to the Norristown Civil Service Commission for adjudication.

Jurisdiction relinquished.