**Eleanora C. BELL, Appellant,**

v.

**LEHIGH COUNTY BOARD OF ELECTIONS and City of Allentown and Thomas W. Burke, Daniel Scott Armstrong, Patricia M. Engler, Russell W. Platek and R. Scott Unger.**

Commonwealth Court of Pennsylvania.

Argued April 21, 1999.

Decided April 26, 1999.

---

Blake C. Marles, Lehigh Valley, for appellant.

Francis P. Burianek and Andrew V. Schantz, Allentown, for appellee, City of Allentown.

Before COLINS, President Judge, DOYLE, J., and FRIEDMAN, J.

FRIEDMAN, Judge.

Eleanor C. Bell (Bell) appeals from an order of the Court of Common Pleas of Lehigh County (trial court) denying Bell's motion to preliminarily enjoin the Lehigh County Board of Elections (Board) from placing a voter initiative relating to the City of Allentown's (City) Landlord Licensing Law (Ordinance) on the May 1999 election ballot. We affirm.

On November 25, 1998, five City voters, desiring to invoke the initiative process of the City's Home Rule Charter (Charter),[1] submitted ninety-three petitions to the City clerk. The petitions contained more than 2,000 signatures of registered City voters and requested that the proposed Ordinance be placed on the ballot at the next municipal election. On January 27, 1999, the City clerk certified to the Board that the City had obtained petitions containing the requisite number of signatures for placement of the proposed Ordinance on the May 1999 primary election ballot. The Board accepted the certification and, on March 17, 1999, agreed to place the proposed Ordinance on the May 18, 1999 primary election ballot.

Bell subsequently filed a complaint against the Board and the City (Board/City) seeking to have the trial court enjoin the placement of the proposed Ordinance on the May 1999 primary ballot. Bell's complaint contained four objections.

In Count I of the complaint, Bell argued that the provisions of the City's Charter that govern the initiative process are void pursuant to section 2962(a)(5) of the Home Rule Charter and Optional Plans Law (Home Rule Charter Law).[2] According to Bell, The Third Class City Code (Code),[3] not the Charter, governs the initiative process, and the Board/City failed to apply the Code to the procedure here. In Count II of the complaint, Bell argued that sections 1030 and 1050 of the Code,[4] which

---

1. Sections 1002 to 1009 of the Charter govern the initiative process. (S.R.R. at 70b–71b.)

2. Section 2962(a)(5) of the Home Rule Charter Law, 53 Pa.C.S. § 2962(a)(5), provides that with respect to the "conduct of elections," a home rule charter shall not give any power or authority to the municipality that is contrary to, or in limitation or enlargement of, powers granted by statutes that are applicable to a class of municipalities.

3. Act of June 23, 1931, P.L. 932, as amended, 53 P.S. §§ 35101–39701.

4. Section 1030 of the Code, 53 P.S. § 36030, provides that any proposed ordinance may be submitted to a city council by a petition signed by the electors of any city, except proposed ordinances relating to "any matter, subject or thing, which is not the subject of a referendum vote as provided in [section 1050 of the Code]."

Section 1050(c) of the Code, 53 P.S. § 36050(c), provides that no ordinance

apply here, prohibit the use of the initiative process for a proposed ordinance that pertains to the preservation of the public health and safety. Bell then asserted that because the purpose of the proposed Ordinance is to protect the public health and safety, the Board/City should have disallowed the use of the initiative process here. In Count III of the complaint, Bell asserted that, even if the initiative process in the City's Charter applies here, and not the process set forth in the Code, the circulators of the petitions failed to comply with the requirement that a circulator state the number of signatures on the petition. Finally, in Count IV of the complaint, Bell argued that the adoption of legislation through the initiative process violates the due process rights of persons opposed to the legislation. Bell maintained that the initiative process deprives opponents of the legislation of their right to be heard by the voters. (S.R.R. at 4b–13b.)

The Board and the City each filed answers to Bell's complaint. (S.R.R. at 39b–51b.) On March 18, 1999, the trial court granted leave to intervene to Thomas W. Burke, Daniel Scott Armstrong, Patricia M. Engler, Russell W. Platek and R. Scott Unger. (S.R.R. at 52b.) A hearing was held before the trial court on March 19, 1999, and, on March 23, 1999, the trial court issued an order denying Bell a preliminary injunction. (*See* Appellant's brief

at 3.) On April 8, 1999, the trial court issued an opinion in support of its March 23, 1999 order. (*See* Trial court op. at 2 n. 1.)

■ On appeal to this court,[5] Bell argues: (1) section 2962(a)(5) of the Home Rule Charter Law does not permit the City to alter the initiative process in its Charter; (2) the initiative process set forth in the Code, which applies here, precludes this particular initiative; (3) even if the City's Charter applies in this case, its provisions governing the initiative process were not followed; and (4) the adoption of legislation by the initiative process violates the due process rights of the opponents to the legislation.

■ Because we believe that the trial court thoroughly analyzed these issues and correctly answered them, we affirm the trial court's March 23, 1999 order and adopt the well-reasoned opinion of Judge Alan M. Black in *Bell v. Lehigh County Board of Elections*, Court of Common Pleas of Lehigh County, Civil Division, No. 99–E–15, filed April 9, 1999.

*ORDER*

AND NOW, this 26th day of April, 1999, the order of the Court of Common Pleas of Lehigh County, dated March 23, 1999, is affirmed.

passed by a city council shall go into effect before ten days from the time of its final passage, except "[o]rdinances for the preservation of the public peace, health, morals, safety, and in the exercise of the police powers of the city government, and for the prevention and abatement of nuisances."

5. Our scope of review in this case is limited. On appeal from a decree denying a prelimi-

nary injunction, we will not inquire into the merits of the controversy but will, instead, examine the record only to determine if there were any apparently reasonable grounds for the action of the trial court. *James T. O'Hara, Inc. v. Borough of Moosic*, 148 Pa.Cmwlth. 535, 611 A.2d 1332 (1992) (citing *Lutz Appellate Printers, Inc. v. Department of Property and Supplies*, 472 Pa. 28, 370 A.2d 1210 (1977)).

ATTACHMENT

## COURT OF COMMON PLEAS OF LEHIGH COUNTY, PENNSYLVANIA
### CIVIL DIVISION

ELEANORA C. BELL, Plaintiff

vs.

LEHIGH COUNTY BOARD OF ELECTIONS and CITY OF ALLENTOWN, Defendants

and

THOMAS W. BURKE, DANIEL SCOTT ARMSTRONG, PATRICIA M. ENGLER, RUSSELL W. PLATEK and R. SCOTT UNGER, Intervenors.

No. 99–E–15
CIVIL ACTION—EQUITY

Appearances:

Blake Marles, Esq., For the Plaintiff.

John Ashcraft, Esq., Assistant County Solicitor, For the Defendant Lehigh County Board of Elections.

Francis P. Burianek, Esq., Assistant City Solicitor, Andrew V. Schantz, Esq., For the Defendant City of Allentown.

Jackson Eaton, Esq., For the Intervenors.

### OPINION

ALAN M. BLACK, Judge.

Plaintiff seeks a preliminary injunction to prevent Defendants from placing a proposed ordinance on the May 18, 1999, primary election ballot for the City of Allentown.[1] The proposed ordinance, known as the Allentown Landlord Licensing Bill, would replace the existing landlord licensing procedure in order to correct health and safety problems in rental housing in the City. The proposed ordinance is to appear on the ballot pursuant to a voter initiative under Section 1002 of the City's Home Rule Charter (hereinafter the "Allentown Charter" or the "Charter"). For the reasons stated below, we deny the motion for preliminary injunction.[2]

### THE ALLENTOWN HOME RULE CHARTER

On April 23, 1996, Allentown voters adopted the Allentown Home Rule Charter pursuant to the Pennsylvania Home Rule Charter and Optional Plans Law (hereinafter the "Pennsylvania Home Rule Charter Law"), 53 Pa.C.S. § 2901 et seq.[3] Article X of the Allentown Charter, entitled "Citizens' Rights and Participation," provides several mechanisms for enhanced citizen participation in municipal government. These mechanisms include procedures for voter initiative and referendum.

The Third Class City Code also contains provisions for voter initiative and referendum, but these have been largely ineffective because they exclude, inter alia,

[o]rdinances for the preservation of the public peace, health, morals, safety, and in the exercise of the police powers of the city government, and for the prevention and abatement of nuisances.

53 P.S. § 36050(c); see 53 P.S. § 36030. Since almost all municipal legislation falls

---

1. This Opinion is filed in support of the Order of this Court entered March 23, 1999, denying Plaintiff's request for a preliminary injunction.

2. Plaintiff initially petitioned for a "temporary restraining order," which was denied. The term "temporary restraining order" is not used in the Pennsylvania Rules of Civil Procedure. Where emergency relief is needed to prevent immediate and irreparable injury before a preliminary hearing can be held, a Pennsylvania court may grant an ex parete preliminary injunction, provided that a preliminary hearing is scheduled within five days thereafter. See Pa.R.C.P. 1531. Although this is the functional equivalent of a temporary restraining order under federal practice, the court action is properly termed a preliminary injunction, rather than a temporary restraining order. 5 Goodrich–Amram 2d § 1531(a):2 (1990).

3. Allentown is a city of the third class which until 1970 was organized under the Third Class City Code, 53 P.S. § 35101 et seq. From 1970 until December 31, 1996, the City was organized under the Mayor/Council Plan A of the Optional Third Class City Charter Law, 53 P.S. § 41101 et seq.

into this or another excluded category, as a practical matter the exclusions have swallowed up the entire procedure and have made it largely irrelevant.

Article X of the Allentown Charter was designed to overcome these limitations so as to provide a meaningful mechanism for citizen participation. Section 1002A of the Charter provides:

> The qualified voters of the City shall have the power to propose ordinances to the Council. If the Council fails to adopt such an ordinance, the initiative process may be commenced giving the qualified voters of the city an opportunity to adopt or reject said ordinance at a City election.

Unlike the Third Class City Code, the Charter does not limit the subject matter of an ordinance for voter initiative. Therefore, ordinances for the preservation of the public peace, health, morals, safety, or in the exercise of the City's police powers are not excluded from the process.

The Allentown Charter also eased some of the procedural obstacles to the initiative and referendum processes under the Third Class City Code. The Charter in Section 1004A requires the signatures of only 2,000 voters, whereas the Third Class City Code requires 20% of the votes cast for all candidates for mayor at the last City mayoral election, a more difficult goal to achieve.[4] 53 P.S. § 36033. Under the Charter petition signers need not appear personally at the City Clerk's office to sign the petitions there, as required under the Third Class City Code; instead petitions may be circulated by individual electors, who then file the petitions with the City Clerk. Allentown Charter § 1003; cf. 53 P.S. § 36032. There is a 65–day period for circulating initiative petitions under Section 1004E of the Charter, whereas the Third Class City Code only permits 15 days. 53 P.S. § 36031. Thus, the Charter provides significant advantages to proponents of a voter initiative over the Third Class City Code.

### THE CURRENT VOTER INITIATIVE

On November 25, 1998, five Allentown electors desirous of invoking the initiative process of the Charter submitted 93 petitions to the City Clerk. The petitions contained more than 2000 signatures of registered City voters, and requested that the proposed Allentown Landlord Licensing Bill be placed on the ballot at the next municipal election. On January 27, 1999, the City Clerk, in accordance with the Charter, certified to the Lehigh County Board of Elections that petitions with the requisite number of signatures had been obtained and requested that the proposed ordinance be placed on the May, 1999, primary election ballot. The Lehigh County Board of Elections accepted this certification and on March 17, 1999, agreed to place the proposed ordinance on the ballot. The primary election is scheduled for May 18, 1999.[5]

### PLAINTIFF'S OBJECTIONS

Plaintiff has stated four objections to the voter initiative in her request for preliminary injunctive relief. First, Plaintiff contends that the entire initiative process adopted by the City in its home rule charter was beyond the scope of the City's legal authority under the Pennsylvania Home Rule Charter Law. Therefore, according to Plaintiff, the procedures contained in the Third Class City Code still govern, and the sponsors of the initiative admittedly did not comply with those procedures.

Second, Plaintiff contends that the Allentown Charter could not lawfully expand the subject matter of the initiative process beyond those subjects authorized for initiative or referendum under the Third Class

---

4. In this case 20% of such votes would be 3,852.

5. The parties agreed to these facts at the preliminary hearing. A formal stipulation of facts has been filed and made a part of the record.

City Code. Since the Code precludes use of the initiative process for ordinances relating to public peace, health, morals, safety, or in the exercise of the City's police powers, Plaintiff asserts that the proposed landlord licensing ordinance, a public health and safety measure, is not a permissible subject for voter initiative.

Third, Plaintiff argues that even assuming that the Allentown Charter is valid and authorizes a voter initiative for the landlord licensing ordinance, nevertheless the sponsors of the initiative failed to comply with the procedural requirements in the Charter itself. Specifically, Plaintiff states that the affidavits of the petition circulators did not state the number of signatures in each of the 93 petitions.

Finally, Plaintiff claims that the initiative process deprives her of due process of law, in violation of the Fourteenth Amendment to the United States Constitution. The rationale asserted by Plaintiff is that the submission of an ordinance for vote by the entire electorate, rather than by City Council, deprives her of the opportunity for meaningful public hearings on the proposed ordinance.

### DISCUSSION

In determining whether to grant a preliminary injunction, this Court is guided by certain principles. These principles are set forth in *Save Our School v. Colonial School District*, 156 Pa.Cmwlth. 671, 674, 628 A.2d 1210, 1211(1993), as follows:

> [F]or a preliminary injunction to be sustained, the plaintiffs right to relief must be clear, the need for relief must be immediate, and the injury must be irreparable if the injunction is not granted.

(citing *Unionville–Chadds Ford School District v. Rotteveel*, 87 Pa.Cmwlth.Ct. 334, 487 A.2d 109 (1985))

We have examined each of the arguments advanced by Plaintiff in the instant case· and find them to be without merit. Therefore, Plaintiff does not have a clear right to relief. In these circumstances a preliminary injunction must be refused.

### Validity of Allentown's Voter Initiative Procedure

Article 9, Section 2 of the Pennsylvania Constitution states, in pertinent part:

> A municipality which has a home rule charter may exercise any power or perform any function not denied by this Constitution, by its home rule charter or by the General Assembly at any time.

Pa. Const. art. 9, § 2. Plaintiff has not identified any provision of the Pennsylvania Constitution that prohibits or limits the initiative or referendum provisions in the Allentown Charter. Therefore, we must focus our discussion on acts of the General Assembly.

The relevant statute is the Pennsylvania Home Rule Charter Law, which states, in pertinent part:

> **§ 2961. Scope of powers of home rule.** A municipality which has adopted a home rule charter may exercise any powers and perform any function not denied by the Constitution of Pennsylvania, by statute or by its home rule charter. *All grants of municipal power to municipalities governed by a home rule charter under this subchapter, whether in the form of specific enumeration or general terms, shall be liberally construed in favor of the municipality.*
>
> **§ 2962. Limitation on municipal powers.**
>
> (a) **Powers granted by Statute.—** With respect to the following subjects, the home rule charter shall not give any power or authority to the municipality contrary to, or in limitation or enlargement of, powers granted by statutes which are applicable to a class or classes of municipalities:
>
> · · ·
>
> (5) The registration of electors and the conduct of elections.

53 Pa.C.S. §§ 2961 and 2962 (Emphasis added).

Plaintiff claims that the voter initiative process for determining what ordinances are to be placed on the ballot is "the

conduct of elections," and therefore that the City is precluded by the above-referenced Subsection (5) from adopting initiative procedures in its home rule charter. The City, however, distinguishes between the process of determining what matters are to be placed on the ballot and the conduct of the election itself. According to the City, Subsection (5) applies only to the latter and does not proscribe voter initiatives or referenda.

We believe that the distinction drawn by the City is a sound one. There is a difference between the process of determining what matters shall be placed on the ballot and the actual conduct of the election itself. In our view the most appropriate interpretation of the phrase "the conduct of elections" in Subsection (5) is to limit its scope to the election procedures themselves, as set forth in the Pennsylvania Election Code. 25 P.S. § 2600 *et seq.*

We reach this conclusion for several reasons. First, we note:

The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the Legislature. Every law shall be construed, if possible, to give effect to all its provisions....

46 P.S. § 551. In Subsection (5) the phrase "the conduct of elections" is part of a larger phrase which reads, "The registration of electors and the conduct of elections." If "the conduct of elections" were to include all procedures that pertain in any way to the election process, then there would have been no need to include in Subsection (5) a reference to the registration of electors. This suggests that "the conduct of elections" was intended by the Legislature to be construed narrowly. Given a narrow construction, this phrase refers to the procedures for holding elections contained in the Election Code, while the phrase "the registration of electors" then refers to the procedures for registering voters under the Pennsylvania Voter Registration Act, 25 P.S. 961.101 *et seq.*

Second, and of critical importance, is the fact that the Legislature has stated its intention very explicitly in the Pennsylvania Home Rule Charter Law: the grant of municipal power to a municipality governed by a home rule charter "shall be liberally construed in favor of the municipality." 53 Pa.C.S. § 2961. If this grant of municipal power is construed liberally, one must conclude that Allentown was authorized to adopt in its home rule charter new procedures for initiative and referendum different from those set forth in the Third Class City Code.

Third, although case law on the subject is sparse, those cases that have attempted to interpret the grant of municipal power to a home rule municipality have stated that ambiguities are to be resolved in favor of the municipality. *See In re: Petition to Recall Reese,* 542 Pa. 114, 665 A.2d 1162 (1995); *County of Delaware v. Township of Middletown,* 511 Pa. 66, 511 A.2d 811 (1986); *Norristown Fraternal Order of Police, Lodge 31 by Roden v. DeAngelis,* 148 Pa.Cmwlth. 285, 611 A.2d 322 (1992). None of these cases involved the precise issue at hand, but in all of them the Court stated that a home rule municipality's exercise of power is presumed to be valid and that any ambiguity in the statutory limitations of such power is to be resolved in favor of the municipality.

Fourth, in construing a statutory phrase, it is helpful to look at the way in which this phrase has been used by the Legislature elsewhere in the same statute. The phrase "Conduct and Result of Elections" is the title to Subchapter D of the Pennsylvania Home Rule Charter Law. The elections referred to in Subchapter D include the decision to elect a government study commission, the election of members of the commission, and the vote on adoption of a home rule charter. The mechanisms for placing these matters on the ballot are not contained in Subchapter D, but are found in other subchapters of the Home Rule Charter Law. Subchapter D provides in Section 2951:

All elections provided for in this subpart (the Pennsylvania Home Rule Charter

Law) shall be conducted by the election officials for such municipality in accordance with the act of June 3, 1937 (P.L. 1333, No. 320), known as the Pennsylvania Election Code. The election officials shall count the votes cast and make return thereof to the county board of elections in the same manner as is provided by law for the computation of similar returns. Certificates of the results of the election shall be filed by the county board of elections with the municipal council or board, the Department of State and the Department of Community affairs.

53 Pa.C.S. § 2951. Thus, Subchapter D insofar as it deals with "the conduct of elections" covers only the procedures for voting and tabulating the votes under the Election Code. It does not encompass the process of determining whether a matter is to be placed on the ballot. This is strong evidence that the General Assembly did not intend to include the initiative and referendum processes in the phrase "the conduct of elections" in Subsection (5) of Section 2952, part of Subchapter E.

For these reasons, we conclude that the City of Allentown did have authority under the Pennsylvania Home Rule Charter Law to include provisions for initiative and referendum in its home rule charter, and that these provisions superseded the procedures for initiative and referendum under the Third Class City Code.

### The Subject Matter of the Initiative

Unlike the Third Class City Code, the provisions for initiative and referendum in the Allentown Charter do not exclude ordinances for the preservation of public health or safety. The Charter does not contain any limitation on the subject matter of ordinances that can be placed on the ballot. Obviously, proposed ordinances may not contravene constitutional principles; nor may they cover matters prohibit-

ed under the Pennsylvania Home Rule Charter Law. However, neither the Pennsylvania Constitution nor the Pennsylvania Home Rule Charter Law prohibits a home rule municipality from enacting public health or safety ordinances by vote of the electorate.

Significantly, the Optional Third Class City Charter Law, under which the City of Allentown operated from 1970 to 1996, does provide that a city operating under that law may not exercise powers "[r]elating to public health" contrary to or in limitation or enlargement of powers granted under the Third Class City Code. 53 P.S. § 41305(1)(xi). The fact that the Legislature did not include a similar limitation when it later adopted the Pennsylvania Home Rule Charter Law is a clear indication that it intended *not* to so limit municipalities operating under this more recent law.

Plaintiff argues that since the Allentown Charter does not limit the subject matter of ordinances eligible for initiative or referendum, the limitations contained in the Third Class City Code must still be alive. This argument overlooks the fact that the Pennsylvania Home Rule Charter Law and the Allentown Charter *supersede* the Third Class City Code. The Pennsylvania Home Rule Charter Law gives home rule municipalities much greater power, to be liberally construed, subject only to certain specified limitations not here applicable.[6] The City of Allentown was free to adopt initiative and referendum procedures to the full extent of the broad grant of municipal authority given under the Pennsylvania Home Rule Charter Law.

There is no evidence that the City electorate intended, when it adopted the Allentown Charter, to incorporate by implication the subject matter limitations on voter initiatives and referenda that are contained in the Third Class City Code.

---

6. These limitations include, *inter alia*, collection of municipal tax claims, eminent domain procedures, boundary changes, public schools, rates and subjects of taxation, assessment of property for taxation, defining or providing for punishment of any felony or misdemeanor, and municipal planning.

Nothing in the record allows us to conclude that the electorate had any such intention. As noted above, the Charter by its terms does not contain any such limitations. In fact, Section 1002B states specifically that "any ordinance" may be the subject of a referendum.

We believe that when City voters adopted a home rule charter with initiative and referendum procedures and placed no restriction on the subject matter of these procedures, they intended these procedures to be available to the full extent of the City's authority under the Pennsylvania Home Rule Charter Law. Since this law does not limit municipal power in the areas of public health and safety, it would be improper to read any such limitations into the initiative and referendum provisions of the Allentown Charter. We also note that it would have made little sense for the Allentown Charter to devote significant space, as it does, to such procedures if these procedures were to be as limited in subject matter as they are under the Third Class City Code.

### The Circulators' Affidavits and the Number of Signatures

One of the initiative requirements in the Allentown Charter is that each petition circulator's affidavit shall state the number of signatures that are on the petition. In this case the affidavits attached to each of the 93 petitions, though correct in every other respect, did not contain a statement as to the number of signatures on the petition.

In our judgment this omission is not a fatal flaw. The actual count of signatures is made by the City Clerk, and he has done so in this case, certifying to the Lehigh County Board of Elections that the total number of valid signatures is in excess of the 2,000 signatures required. Thus, we consider the requirement that

the circulator's affidavit specify the number of signatures on the petition to be directory, rather than mandatory. We do not believe it appropriate to frustrate the apparent wishes of a large number of voters on the basis of such a technicality.

Moreover, in examining the petition offered into evidence as Exhibit 1, we note that the preprinted petition form actually *does* assign a number to each signatory just to the left of his or her name. Thus, any person looking at the petition would instantly know the number of signatures, without even having to make a count. In view of this, it is easy to see why a petition circulator might assume that there was no need to refer to the number of signatures in the affidavit. By simply looking at a petition, one can instantly see this number.[7]

We also believe that if this omission is to be considered a material defect, it is amendable. *See In re: Kloiber*, 26 Pa. Cmwlth. 50, 362 A.2d 484 (1976) (improperly completed affidavits are amendable at the discretion of the court). Consequently, it would be inappropriate to grant a preliminary injunction on the basis of this issue without leave to amend the affidavits, since the effect would be to remove the question from the May primary ballot. In this event the harm to the Intervenors and other petition circulators from the granting of the preliminary injunction would be greater than any harm to Plaintiff in denying the injunction.

### Due Process of Law

Lastly, Plaintiff claims that she will be deprived of due process of law, in violation of her Fourteenth Amendment rights under the United States Constitution, if she has to debate the merits of the proposed landlord licensing ordinance before the electorate instead of City Council. In other words, Plaintiff contends that the con-

---

7. Unfortunately, counsel did not make an actual affidavit part of the record at the hearing. Exhibit 1, which was intended to be a sample petition and affidavit, upon examination turns out to be only a petition without the attached affidavit of the circulator. Nevertheless, all parties were in agreement at the hearing that the affidavits do not specify the number of signatories.

cept of direct democracy is unconstitutional.

It is not surprising that Plaintiff is unable to cite any legal authority for such a startling proposition. The important constitutional principle of due process of law has been stretched at times, through inventive interpretations, to apply to a broad range of activities. However, no court has stretched the principle this far. In our judgment, the notion that procedures of direct democracy, such as initiative or referendum, deprive a voter of due process of law is bizarre, and we reject it.

For all the foregoing reasons, Plaintiffs motion for preliminary injunction is denied.

**Date: April 8, 1999**

/s/    Alan M. Black
**ALAN M. BLACK, J.**

