# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| In Re: Petition for Agenda Initiative to Place on the Agenda of a Regular Meeting of County Council for Consideration and Vote a Proposed Ordinance Amending Part 12, Government Review, of the Administrative Code of Allegheny County to Add Article 1205, Voting Process Review Commission | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |
| Appeal of: OpenPittsburgh.Org, Black Political Empowerment Project, Tim Stevens, David M. Brown, William Lawrence III, and Mirsada Begovic | : <br> : <br> : <br> :   No. 451 C.D. 2018 <br> :   Argued: October 17, 2018 |

BEFORE:   HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE PATRICA A. McCULLOUGH, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE ELLEN CEISLER, Judge

OPINION BY
JUDGE COVEY                       FILED:  March 26, 2019

OpenPittsburgh.Org, Black Political Empowerment Project, Tim Stevens, David M. Brown, William Lawrence III and Mirsada Begovic (collectively, OpenPittsburgh.Org) appeal from the Allegheny County (County) Common Pleas Court's (trial court) March 15, 2018 order dismissing their appeal. OpenPittsburgh.Org presents the following issues for this Court's review: (1) whether the County Administrative Code's (Administrative Code) subject matter restriction

on voter referenda and agenda initiative petitions related to the conduct of elections is unconstitutional; (2) whether the ordinance (Ordinance) proposed by the Agenda Initiative Petition (Petition) to establish a Voting Process Review Commission to conduct periodic review of the County's voting machine systems is legally proper under the County Home Rule Charter (CHRC) and Pennsylvania's Home Rule Charter and Optional Plans Law (HRC&OPL)[1] as it does not involve the conduct of elections as defined by Pennsylvania law; (3) whether the Ordinance can be read in conjunction with the Pennsylvania Election Code (Election Code)[2] and the Pennsylvania Constitution because it follows the electors' constitutional right to select devices used for recording and computing votes;[3] and, (4) whether the Ordinance's severability clause enables County Council to enact the Ordinance's lawful provisions and sever any individual unlawful, invalid, void or unenforceable provisions therefrom without rejecting the Ordinance in full. After review, we affirm.

On July 24, 2017, OpenPittsburgh.Org submitted the Petition to the County Council's clerk to place the Ordinance on the County Council's regular meeting agenda. Although County Council determined that the Ordinance met all of the Administrative Code's formal requirements, it nevertheless issued a Statement of Clarification dated August 7, 2017 certifying the Petition as insufficient. County Council relied on the County Solicitor's conclusion that the Ordinance is not legally proper for County Council's consideration. On August 17, 2017, OpenPittsburgh.Org appealed from County Council's decision to the trial court, asking the trial court to reverse the County Solicitor's conclusion and to compel County Council to place the

---

[1] 53 Pa.C.S. §§ 2901-3171.
[2] Act of June 3, 1937, P.L. 1333, *as amended,* 25 P.S. §§ 2600-3591.
[3] OpenPittsburgh.Org separated this issue into two arguments. *See* OpenPittsburgh.Org Br. at 4-5. We have combined them for ease of discussion.

Ordinance on its agenda. The trial court dismissed OpenPittsburgh.Org's appeal as meritless. OpenPittsburgh.Org appealed to this Court.[4]

OpenPittsburgh.Org first argues that Section 5-1101.02(C)(3)(e) of the Administrative Code is unconstitutional because it improperly prohibits voter referenda and initiatives simply because they involve elections.[5] The Pennsylvania Supreme Court has reiterated:

> [**O**]**rdinances enjoy the presumption that they are constitutionally valid**. Moreover, it is indisputable that **the party challenging the constitutionality of an ordinance carries the heavy burden of proving that it is unconstitutional**. *See Upper Salford Twp. v. Collins*, . . . 669 A.2d 335, 336 ([Pa.] 1995) ('Anyone challenging the constitutionality of such an ordinance bears a heavy burden of proof.'). Indeed, the 'heavy burden resting upon the person asserting unconstitutionality of legislation is one of the most firmly[-]established principles of our law[.]' *Bilbar Constr. Co. v. Bd. of Adjustment of Easttown Twp.*, . . . 141 A.2d 851, 855 ([Pa.] 1958) (collecting cases). To meet that heavy burden of proof, **a challenger must demonstrate that the legislative enactment at issue clearly, palpably, and plainly violates the Constitution, such that there is no doubt or hesitation in the mind of the court**. *See id.* (explaining that a 'legislative enactment can be declared void only when it violates the fundamental law clearly, palpably, plainly and in such manner as to leave no doubt or hesitation in the minds of the court').

---

[4] "This Court's review is limited to a determination of whether the trial court committed legal error and whether the findings were supported by the evidence." *Wecht v. Roddey*, 815 A.2d 1146, 1149 (Pa. Cmwlth. 2002). "The question of whether the [trial] court[] erred in preventing the placement of the [Ordinance], on the [] County ballot is a pure question of law. Accordingly, our scope of review is plenary and our standard of review is *de novo*." *In re Voter Referendum Petition Filed August 5, 2008*, 981 A.2d 163, 170 (Pa. 2009).

[5] The trial court did not address the constitutionality of Section 5-1101.02(C)(3)(e) of the Administrative Code; however, because it is a pure question of law, *see Fross v. Cty. of Allegheny*, 20 A.3d 1193 (Pa. 2011), and this Court's review is *de novo*, *see In re Voter Referendum Petition Filed August 5, 2008*, we will address the issue herein.

*Rufo v. Bd. of License & Inspection Review*, 192 A.3d 1113, 1120 (Pa. 2018) (citation omitted; emphasis added).

Section 5-1101.02(C)(3) of the Administrative Code provides, in relevant part: "As the powers of the [sic] are determined by applicable law, the following areas cannot be the subjects of agenda initiative or of voter referendum: . . . [r]egistration of electors and conduct of elections[.]" Appellee Br. Appendix A at 2. Section 5-1101.01 of the Administrative Code defines agenda initiative as:

> The presentation to County Council a petition with at least 500 signatures of registered voters in [the] County proposing an [o]rdinance for Council's consideration and vote within the next 60 days. The proposed [o]rdinance must be germane to County [g]overnment and limited to one subject clearly expressed in its title. Pursuant to Article XII, § 1.12-1201, of the [CHRC], an agenda referendum petition is defined to be the same as an agenda initiative petition.

Appellee Br. Appendix A at 1. Voter referendum is defined as:

> The filing with the applicable election officials on or before the 13th Tuesday prior to the next primary or general election a petition containing a proposed ordinance for referendum signed by registered voters comprising at least 5% of the number of registered voters in the County voting for the Office of Governor in the most recent gubernatorial general election. The applicable election official shall place the proposal on the ballot for decision by referendum at said election.

*Id.*

Our Supreme Court explained:

> [U]nlike states such as California, governance by referenda is a relatively rare occurrence **in Pennsylvania**, where **we** hold strong to the ideals of representative democracy and **have no general constitutional provision for voter initiative or referenda**. *See English v. Commonwealth,* 845 A.2d 999, 1002 (Pa. Cmwlth. 2004) ('**[N]either Article I, Section 2 nor any other provision of the Pennsylvania**

4

**Constitution provides an unlimited right to challenge laws via initiative and referendum**.'); Governor's Center for Local Government Service, Pennsylvania Department of Community and Economic Development, Referendum Handbook (1999). Instead, referenda are limited to areas of the law that are specifically identified either in our Constitution or by act of the General Assembly. . . . An exception to the general rule against referenda is contained in many Home Rule Charters, including that of Allegheny County.

In 2000, Allegheny County adopted the Home Rule Charter, which in relevant part, provided for the rights of initiative and referendum. The preamble to the Charter provides[:] 'We the people of Allegheny County, Pennsylvania, believe that: . . . [a] home rule government that permits initiative and referendum will respond to the concerns of its citizens.' Article XII of the Home Rule Charter sets forth three areas for voter involvement. First, 'voters of the County shall have the power to propose ordinances by petition for consideration by County Council.' Home Rule Charter, Article XII, § 1 (entitled 'Agenda Initiative'). Section 2, entitled 'Voter Referendum,' provides, 'voters of the County shall have the power to propose ordinances by petition for consideration by the voters of the County.' Home Rule Charter, Article XII, § 2(a). Voter referendum questions must be germane to County government and involve a single subject, clearly expressed in the title. Moreover, the petition seeking a voter referendum must be signed by voters of the County comprising five percent of the number of voters who voted in the most recent gubernatorial election, which currently requires approximately 23,000 voters. [CHRC,] Article XII, § 2(b). If approved by the voters, the ordinance proposed in the referendum question 'shall become effective in accordance with its terms' and 'shall not be subject to veto and shall not be amended or repealed by County Council for two years following its approval.' [CHRC,] Article XII, § 2(d). Finally, the third method of voter involvement is amending the Home Rule Charter through a referendum initiated by ordinance of County Council or by petition of voters. [CHRC], Article XII, § 3 (entitled 'Amendment of the [CHRC]').

*In re Voter Referendum Petition Filed August 5, 2008*, 981 A.2d 163, 171 (Pa. 2009) (citations and footnotes omitted).

OpenPittsburgh.Org appears to argue that Section 5-1101.02(C)(3)(e) of the Administrative Code violates Article IX, Section 2 of the Pennsylvania Constitution because "local referenda on the authorization of voting machines is expressly authorized under the Pennsylvania Constitution and by acts of the General Assembly." OpenPittsburgh.Org Br. at 18. However, this Court has expounded:

> [Article IX, Section 2 of the Pennsylvania Constitution] limits the power of state government to infringe on the natural rights of citizens and recognizes the right to alter, reform or abolish government. Nonetheless, **there is no legal authority indicating that the provision has ever been interpreted to create an inherent right to exercise initiative and referendum as to every legislated measure**.
>
> Nor does the language of Article I, Section 2 [of the Pennsylvania Constitution] contradict the basic rule of law that **the General Assembly has authority to exclude certain legislative matters from the initiative and referendum process**. *Williams v. Rowe, . . .* 283 A.2d 881 ([Pa. Cmwlth.] 1971) (in a representative form of government, the General Assembly possesses legislative discretion to preclude specific matters from the referendum process).

*English v. Commonwealth*, 816 A.2d 382, 387 (Pa. Cmwlth. 2003).

Based on the above, this Court rules that OpenPittsburgh.Org has failed to "demonstrate that the legislative enactment at issue clearly, palpably, and plainly violates the Constitution, such **that there is no doubt or hesitation in the mind of the court**." *Rufo*, 192 A.3d at 1120 (emphasis added). Accordingly, because OpenPittsburgh.Org has not met its "heavy burden of proving that [Section 5-1101.02(C)(3)(e) of the Administrative Code] is unconstitutional[,]" this Court cannot rule that Section 5-1101.02(C)(3)(e) of the Administrative Code is unconstitutional. *Id.*

6

OpenPittsburgh.Org next argues that the Ordinance is legally proper under the CHRC and the HRC&OPL, as it does not involve the conduct of elections as defined by Pennsylvania law.

Initially, Section 2962(a) of the HRC&OPL provides, in relevant part:

> With respect to the following subjects, **the home rule charter shall not give any power or authority to the municipality contrary to or in limitation or enlargement of** powers granted by statutes which are applicable to a class or classes of municipalities: . . . [t]he registration of electors and **the conduct of elections**.

53 Pa.C.S. § 2962(a) (emphasis added). Section 3107-C(h) of the Second Class County Code[6] states in pertinent part:

> With respect to the following subjects, **the charter shall not give any power or authority to the county contrary to or in limitation or enlargement of** powers granted by acts of the General Assembly which are applicable to counties of the second class: . . . [t]he registration of electors and **the conduct of elections**.

16 P.S. § 6107-C(h) (emphasis added). Correspondingly, the CHRC establishes that the procedures for agenda referendum petitions shall be established in the Administrative Code, *see* CHRC, Art. XII §§ 1.12-1201, which prohibits agenda initiative or voter referendum involving **the conduct of elections**. *See* Administrative Code, § 5-1101.02(C)(3).

OpenPittsburgh.Org relies upon *Bell v. Lehigh County Board of Elections*, 729 A.2d 1259 (Pa. Cmwlth. 1999), wherein this Court adopted and attached the Lehigh County Common Pleas Court's (*Bell* trial court) opinion, to support its position. The *Bell* trial court discussed the meaning of the *conduct of elections* in the context of whether "the entire initiative process adopted by

---

[6] Act of July 28, 1953, P.L. 723, No. 230, *as amended*, added by Section 3 of Act of May 20, 1997, P.L. 149, No. 12, 16 P.S. § 6107-C(h). Allegheny County is a second class county.

7

[Allentown] in its home rule charter was beyond the scope of [Allentown's] legal authority under the Pennsylvania Home Rule Charter Law." *Id.* at 1263. The *Bell* trial court concluded, which this Court adopted:

> Subchapter D [of the HRC] entitled: Conduct and Result of Elections] insofar as it deals with 'the conduct of elections' covers only the procedures for voting and tabulating the votes under the Election Code. **It does not encompass the process of determining whether a matter is to be placed on the ballot**. This is strong evidence that the General Assembly did not intend to include the initiative and referendum processes in the phrase 'the conduct of elections'. . . .

*Bell*, 729 A.2d at 1266 (emphasis added).

In the instant case, Section 1205.1 of the Ordinance states in relevant part:

> The intent of this article is to establish a Voting Process Review Commission having technical expertise, election operating experience, and an awareness of the requirements for voters with special needs, that will conduct regular periodic reviews of the equipment and software utilized by the County for its voting system and related administrative support and of the policy, practices, processes, and procedures **which may involve or affect the conducting of elections** . . . .

Reproduced Record (R.R.) at 215a (emphasis added). Section 1205.2 of the Ordinance establishes the Voting Process Review Commission and states:

> A[] [] County Voting Process Review Commission shall be created and empowered as provided herein to conduct evaluation reviews to assess the viability, efficiency, and effectiveness of the County's hardware and accompanying software used for its voting system and administrative support, and, of policies, practices, processes, and procedures **that pertain to or may affect conducting of elections**.

8

*Id.* (emphasis added). As the Ordinance itself expressly states that its purpose is to create a commission to review the equipment and "policy, practices, processes, and procedures which may involve or affect the conducting of elections" and that the Voting Process Review Commission will be empowered to review the County's "policies, practices, processes, and procedures that pertain to or may affect conducting of elections[,]" the *Bell* analysis is not warranted. *Id.* The Ordinance leaves no doubt that it involves the conduct of elections. Notwithstanding, as the Voting Process Review Commission established by the Ordinance is empowered "to assess the viability, efficiency, and effectiveness of the County's hardware and accompanying software used for its voting system[,]" *id.*, the Ordinance clearly involves "the procedures for voting and tabulating the votes under the Election Code. . . ." *Bell*, 729 A.2d at 1266. Consequently, the Ordinance involves "the conduct of elections," as that term was established in *Bell. Id.* Accordingly, the Ordinance is not authorized by the CHRC or the HRC&OPL.[7]

---

[7] This Court notes that the Ordinance would also require County Council to initiate a voter referendum under the CHRC. *See* Section 1205.16(A) of the Ordinance ("County Council shall by resolution cause a referendum question to be placed on the ballot in a special election[.]"). Our Supreme Court has held that County Council has no authority to initiate a voter referendum on any subject other than an amendment of the CHRC pursuant to Article XII, §3 thereof. *See In re Voter Referendum.* Specifically, the Supreme Court explained:

> County Council has no authority to enact a referendum under the [CHRC]. . . . The [CHRC] has no provision for County Council to propose voter referendums, outside of an amendment of the [CHRC]. The only method for placing a voter referendum on the ballot is through the collections of currently 23,000 signatures of registered voters (five percent of the number who voted in the most recent gubernatorial election.)

*Id.* at 178. Our Supreme Court concluded: "[T]o allow a majority of the nine council[]members to place a referendum on the ballot undermines the protections placed in the [CHRC] and potentially opens the County to a dramatic change in governance without an amendment to the [CHRC]." *Id.* As such, the Ordinance would fail on this point as well.

9

OpenPittsburgh.Org next asserts that the Ordinance can be read in conjunction with the Election Code and the Pennsylvania Constitution because it follows the electors' constitutional right to select devices used for recording and computing votes.

Pennsylvania Constitution Article VII, Section 6 provides:

> All laws regulating the holding of elections by the citizens, or for the registration of electors, shall be uniform throughout the [s]tate, except that laws regulating and requiring the registration of electors may be enacted to apply to cities only, provided that such laws be uniform for cities of the same class, and except further, that **the General Assembly shall, by general law, permit the use of voting machines, or other mechanical devices for registering or recording and computing the vote, at all elections or primaries, in any county, city, borough, incorporated town or township of the Commonwealth**, at the option of the electors of such county, city, borough, incorporated town or township, without being obliged to require the use of such voting machines or mechanical devices in any other county, city, borough, incorporated town or township, **under such regulations with reference thereto as the General Assembly may from time to time prescribe**. The General Assembly may, from time to time, prescribe the number and duties of election officers in any political subdivision of the Commonwealth in which voting machines or other mechanical devices authorized by this section may be used.

Pa. Const. art. VII, § 6 (emphasis added). Section 302 of the Election Code states, in relevant part:

> **The county boards of elections**, within their respective counties, **shall exercise**, in the manner provided by [the Election Code], **all powers** granted to them by [the Election Code], and shall perform all the duties imposed upon them by [the Election Code], **which shall include** the following: . . .
>
> [t]o purchase, preserve, store and maintain primary and election equipment of all kinds, including voting booths,

10

**ballot boxes and voting machines, and to procure ballots and all other supplies for elections**.

25 P.S. § 2642 (emphasis added). Because the Pennsylvania Constitution reserves the power to provide, by general law, the use and choice of voting machines to the General Assembly, and the General Assembly has enacted the Election Code which delegates said power to the County's Board of Elections (Elections Board), the Election Code is the final authority on voting machines in this Commonwealth. Thus, the Elections Board has the exclusive control over election equipment.

Section 5-1205.16 of the Ordinance establishes:

A. If the [Voting Process Review] Commission's preliminary review finds the County's present voting system fails to meet all of the mandatory minimum criteria and that updating, upgrading or modifying it would be insufficient, or, if at a later point in its continuing review the Commission deems full replacement of the existing voting system to be necessary or advisable and the preferred alternative, then **upon the [Voting Process Review] Commission's request, County Council shall by resolution cause a referendum question to be placed on the ballot in a special election; a yes vote to the question approving, and a no vote rejecting, replacement as designated by the [Voting Process Review] Commission; the question to read: 'Shall the County of Allegheny replace its current voting system in accordance with the designation and recommendations of the Voting Process Review Commission?'**

B. **A referendum** to approve or reject replacement of the existing voting system **shall be scheduled** for no later than would enable implementation of the [Voting Process Review] Commission's findings prior to the municipal election cycle preceding the next presidential election.

C. In the time before the referendum, under the direction of the [Voting Process Review] Commission, **the County shall conduct an educational program to adequately notify the public** about the Referendum and the considerations involved so voters can make an informed decision.

11

D. Should the referendum question receive a majority vote approving the replacement, then **the County shall immediately proceed as designated in the** [**Voting Process Review**] **Commission's Final Report**. Alternatively, should the question receive a majority vote rejecting the designated replacement, the replacement of the voting system shall not proceed, except that the Pennsylvania Secretary of State or a court of competent jurisdiction may with just cause require the replacement. In any case, the Final Report's other designated actions and recommendations shall be deemed still effective.

R.R. at 223a (emphasis added). Section 5-1205.17 of the Ordinance further provides, in pertinent part:

A. Upon the public release and presentation of the Final Report of the Voting Process Review Commission, **its findings shall be presented to the** [**Elections Board**] **and to County Council.** In addition, [Voting Process Review] Commission members shall meet with the [Elections] Board and Council as needed to provide additional information, answer questions, and assist implementation of the [Voting Process Review] Commission's designated voting system requirements and recommendations.

B. In order to avoid obstructive issues of timing and to provide ample funding in adequate time for the **potential implementation of a new voting system designated by the first Voting Process Review Commission and of its recommendations**, such to be available for the 2019 Municipal election cycle:

(1) Upon enactment of this [O]rdinance, [County] Council and the Administration **shall proceed with the transfer of all remaining bond proceed appropriations from the** [**Help America Vote Act** (]**HAVA**[)[8]] **Compliant Voting Machines project and all remaining appropriations from those transferred in 2006 to a project entitled HAVA Compliant Voting Machines Paper Verification System Upgrade to a new project** established for the purpose of implementing the designated voting system

---

[8] 42 U.S.C. §§ 15301-15545.

requirements and recommendations of the Voting Process Review Commission;

(2) With replacement of the entire voting machine inventory likely to necessitate capital expenditures which would be too large to fit into the existing capital budget for a given year merely by amending it, the Administration and [County] Council **shall**, upon enactment of this [O]rdinance, **initiate the necessary budgeting process(es) for appropriation and allocation of an amount sufficient to cover the anticipated need** with such being assigned to a project fund that is dedicated to and set aside specifically for implementation of the [Voting Process] Review Commission's designated voting system requirements and additional recommendations;

(3) Upon release of the Commission's Final Report, such appropriation(s) and allocation(s) as necessary **shall** be amended and adjusted to **make available an amount sufficient to fully fund implementation of the** [**Voting Process Review**] **Commission's designated voting system requirements and additional recommendations**, with such being placed into the project fund designated for such purpose;

(4) To ensure there will be enough lead time for a budget cycle to take place and for budget adjustments and/or amendments to be made upon release of the [Voting Process Review] Commission's Final Report, **the necessary budget process shall be expedited** as possible to make the funding available as needed for implementation of the [Voting Process Review] Commission's designated system requirements, which if for a new voting system shall be upon approval of the electorate by referendum, and for any additional recommendations;

(5) **The project fund** for implementation of the [Voting Process Review] Commission's designated system and additional recommendations **shall be used by the Administration for the acquisition of voting system equipment, hardware, and software, for related contractual arrangements**, and for such other ancillary purposes as designated by the [Voting Process] Review Commission in compliance with the provisions of this ordinance and shall be made available to the [Elections

13

Board] to implement, as it may, recommendations from the Voting Process Review Commission.

R.R. at 223a-224a (emphasis added).

A review of the above Ordinance provisions reveals that the Voting Process Review Commission would, in effect be acting as the General Assembly and/or the Elections Board by mandating that the County Council by resolution cause a referendum question to be placed on the ballot in a special election and by further mandating the County Council proceed as designated in the Voting Process Review Commission's Final Report. The Ordinance not only usurps the General Assembly's authority and the Elections Board's control over Commonwealth voting machines, but also the funding thereof. Accordingly, the trial court properly concluded that the Ordinance arrogates the General Assembly's power and undermines the Elections Board's responsibilities.

Lastly, OpenPittsburgh.Org argues the Ordinance's severability clause enables County Council to enact all of the Ordinance's lawful provisions and sever any individual unlawful, invalid, void or unenforceable provisions therefrom without rejecting the Ordinance in full.[9]

Section 3 of the Ordinance provides: "***If any provision of this Ordinance shall be determined to be unlawful, invalid, void or unenforceable, then that provision shall be considered severable from the remaining provisions of this Ordinance which shall be in full force and effect.***" R.R. at 225a (italic and bold emphasis in original).

---

[9] This Court notes that the doctrine of severability applies to duly enacted laws, and OpenPittsburgh.Org has failed to cite to any precedent which requires the General Assembly, or in this case County Council, to sever parts of any statute, law or ordinance that are merely proposed and not already enacted and later challenged. However, in an abundance of caution this Court will address the issue herein.

14

Section 1925 of the Statutory Construction Act of 1972 (SCA) establishes:

> The provisions of every statute shall be severable. If any provision of any statute or the application thereof to any person or circumstance is held invalid, the remainder of the statute, and the application of such provision to other persons or circumstances, shall not be affected thereby, unless the court finds that the valid provisions of the statute are so essentially and inseparably connected with, and so depend upon, the void provision or application, that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

1 Pa.C.S. § 1925.[10] "Thus, we turn to consider whether the statute can survive without those invalid provisions, with principal focus on the legislature's intent. 1 Pa.C.S. § 1925; *Saulsbury v. Bethlehem Steel Co., . . .* 196 A.2d 664, 667 ([Pa.] 1964) ('In determining the severability of a statute or ordinance, **the legislative intent is of primary significance**.')." *Commonwealth v. Hopkins*, 117 A.3d 247, 259 (Pa. 2015) (emphasis added).

After reviewing the Ordinance and the applicable law, this Court concludes that the Ordinance is an invalid usurpation of the General Assembly's power involving the conduct of elections and undermines the Elections Board's responsibilities with respect to elections by establishing a Voting Process Review Commission which not only reviews the election process, but also determines how and when new voting machines are funded, and specifies a particular time when County Council shall issue a referendum involving new voting machines.

---

[10] "Although the [SCA] does not apply expressly to . . . ordinances, the principles contained in [the SCA] are followed in construing a[n] . . . ordinance." *Trojnacki v. Bd. of Supervisors Solebury Twp.*, 842 A.2d 503, 509 (Pa. Cmwlth. 2004) (quoting *Tobin v. Radnor Twp. Bd. of Comm'rs,* 597 A.2d 1258, 1264 (Pa. Cmwlth. 1991)).

Consequently, "[b]ecause of the significant provisions found to violate the [Administrative Code and the HRC&OPL], which clearly express the intent of the [Ordinance] that [it involves the conduct of elections], . . . [this Court] find[s] the remaining unoffending provisions of [the Ordinance] are incapable of being severed[.]" *Id.* at 262.

For all of the above reasons, the trial court's order is affirmed.


_____
ANNE E. COVEY, Judge

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Petition for Agenda Initiative :
to Place on the Agenda of a Regular :
Meeting of County Council for :
Consideration and Vote a Proposed :
Ordinance Amending Part 12, :
Government Review, of the :
Administrative Code of Allegheny :
County to Add Article 1205, Voting :
Process Review Commission :
 :
Appeal of: OpenPittsburgh.Org, :
Black Political Empowerment Project, :
Tim Stevens, David M. Brown, :
William Lawrence III, and : No. 451 C.D. 2018
Mirsada Begovic :

## O R D E R

AND NOW, this 26th day of March, 2019, the Allegheny County Common Pleas Court's March 15, 2018 order is affirmed.

_____
ANNE E. COVEY, Judge